[Civ. No. 13281. First Dist., Div. One. July 28, 1947.]

THE PEOPLE, Appellant, v. ONE 1941 CHRYSLER 6 TOURING SEDAN, ENGINE NO C34-9458, Defendant; JOHN B. TREADWELL, Respondent.

20

Robert W. Kenny and Fred N. Howser, Attorneys General, and Ralph W. Scott, Deputy Attorney General, for Appellant.

Alfred J. Hennessy for Respondent.

PETERS, P. J.—A rehearing was granted in this case because of the contention of the attorney general, made for the first time on rehearing, that, even if the judgment here involved is void, since it is not void on its face, and since section 473a of the Code of Civil Procedure is not applicable, the sole remedy of the party adversely affected is an independent suit in equity unless such party moves to set the judgment aside within six months of its entry as provided in section 473 of the Code of Civil Procedure. Here the motion to set the judgment aside was made 363 days after the judgment of forfeiture by default was entered. After further study of this problem we are convinced that the contention made is without merit.

The contention fails to consider all of the various paragraphs of section 473, assumes that the six-month limitation found in paragraph 3 of that section is applicable to the entire section, and assumes that, unless section 473a applies, there is no power in a trial court to allow such relief after six months. This confusion arises because of the fact that prior to 1933 the provisions of section 473 and of section 473a were contained in one section, so that there was both a six-month and a one-year limitation found in the section, applicable, of course, to different situations. In that year the original section 473 was split into two parts. Old paragraph 3 of section 473 remained in that section. That paragraph refers to judgments taken against a party through his "mistake, inadvertence, surprise, or excusable neglect," and requires the motion to be made within six months. The paragraph has no direct reference to void judgments. Section 473a (formerly and until 1933 a part of section 473) provides for a particular situation—where summons has not been personally served (even though constructive service is permitted) the court may allow the aggrieved party within one year to answer on the merits. Both the third paragraph of section 473 and section 473a are primarily directed to setting aside valid judgments. Prior to 1933, section 473 contained no express provision relating to the power of courts to set aside void judgments. But prior to that time the law was settled that courts of record possessed inherent power to set aside a void judgment, whether or not it was void on its face, provided that, as to a void judgment not void on its face, the motion was made within a reasonable time. If the motion was not made within a reasonable time the party was relegated to an action in equity. In determining whether the motion was made within

a reasonable time the courts applied by analogy the one-year provision of old section 473, now section 473a. Thus, when these old cases referred to the time limits of section 473 they were referring to the one-year limitation, not the six-month limitation. When the Legislature revamped section 473 in 1933, and broke it down into two sections, they added to section 473 paragraph 4. This paragraph was formerly section 900a of the Code of Civil Procedure, applying to courts not of record. So far as pertinent here that paragraph now reads: "The court may . . . on motion of either party after notice to the other party, set aside any void judgment or order." (For a discussion of the 1933 amendments to section 473 see *Estate of Estrem,* 16 Cal.2d 563, 572 [107 P.2d 36]; *F. E. Young Co.* v. *Fernstrom,* 31 Cal.App.2d Supp. 763, 764, et seq. [79 P.2d 1117].)

The addition of paragraph 4 to section 473 in no way changed the then existing law. It merely gave express statutory recognition to an inherent power of the court. It in no way changed the period within which a motion to set aside the void judgment must be made. That period remained a reasonable time, which, by analogy, is the one-year period now contained in section 473a. Any other conclusion would lead to an absurdity. Thus, under section 473a a person against whom a valid judgment has been secured on constructive service may be relieved on motion any time within one year, but, if the contention of appellant were sound, a court could not, on motion, relieve a party from a void judgment not void on its face where there was no personal service, after the passage of six months.

The conclusion that a court possesses inherent power to set aside on noticed motion a void judgment not void on its face if the motion is made within a reasonable time and that such "reasonable" time is one year and not six months, is abundantly supported by the cases decided before and after 1933. A few of the cases decided prior to 1933 are *Smith* v. *Jones,* 174 Cal. 513 [163 P. 890; *In re Dahnke,* 64 Cal.App. 555; [222 P. 381]; *Vaughn* v. *Pine Creek Tungsten Co.,* 89 Cal.App. 759 [265 P. 491], and *Barnett* v. *Reynolds,* 124 Cal.App. 750 [13 P.2d 514]; see, also, *Richert* v. *Benson Lumber Co.,* 139 Cal.App. 671 [34 P.2d 840], decided in 1934 but discussing the old statute.

In 1938, the Appellate Department of the Superior Court of San Diego County wrote a most interesting and informative opinion on these matters in *F. E. Young Co.* v. *Fernstrom,*

31 Cal.App.2d. Supp. 763 [79 P.2d 1117]. There the trial court attempted on motion to set aside a judgment four years after its entry. The order setting aside the judgment was reversed solely because more than *one year* had elapsed from the entry of judgment. The court, after referring to the 1933 amendments to section 473 and calling attention to and quoting paragraph four of the amended section, stated (p. 765):

"This amendment made explicit a power which superior courts had always had independently of section 473 or of any other statutory provisions. (*Richert* v. *Benson Lumber Co.,* 139 Cal. [App.] 671, 674 [34 P.2d 840], and many cases cited.) The only reason that we can think of, therefore, for writing it expressly into section 473, is the probability that the legislature, which must be presumed to have known that the power to set aside void judgments was inherent in courts of record, had some fear lest if it were not, after the repeal of sections 859 and 900a, Code of Civil Procedure, placed in some statute, courts not of record might be held not to possess it at all.

"As applied to superior courts, however, it was unquestionably the law prior to 1933, that attacks by motion upon judgments void for want of jurisdiction but not appearing to be void on their faces, must be made within a reasonable time, and the courts were held to be limited in deciding which was a reasonable time, not under section 473, Code of Civil Procedure, but by analogy to it, to a maximum of one year after the entry of the judgment except in the single case of actual fraud on the part of the process server in making a false return. (See discussion in *Richert* v. *Benson Lumber Co., supra.*) That having been the settled rule with respect to superior court proceedings had prior to the amendment to section 473 in 1933, we see no reason to believe that the legislature intended to deal with the question of the *time* within which motions to set aside such judgments might be made by the amendment. The new language inserted in the section contains nothing purporting to govern the matter. In these circumstances we think the former rule that a reasonable time only should be allowed ought to be held still to prevail, and that, by analogy, to the limit fixed by section 473a in cases generally where personal service has not been made (as e. g., in case of service by publication), that the motion must still be made within the year next following the entry of judgment (except in the case of bad faith on the part

of the process server or person responsible for the actual making of the return of service)."

All of the cited cases and the rules announced therein were reaffirmed by the Supreme Court in 1940 in *Estate of Estrem,* 16 Cal.2d 563 [107 P.2d 36], where the court stated (p. 571):

"We need not be concerned with the proper characterization of such proceedings as a direct or collateral attack. Long prior to this amendment [of 1933 to § 473] it was well established that the superior court had jurisdiction *at any time* to set aside a judgment or order *void on its face.* [Citing many cases.] It was further settled that it had the power *within a reasonable time,* which by analogy to Code of Civil Procedure section 473a was limited to one year, to set aside a *default* judgment or order void, not on its face, but because of want of jurisdiction over the person of a defendant who had at no time been present in the proceedings. [Citing the Richert, Smith, Dahnke, Barnett and Vaughn cases, *supra.*] In addition, a judgment could be attacked at any time either by motion or in an independent action in equity on the ground that it was procured by extrinsic fraud. [Citing cases.]

"Prior to 1933 this particular subdivision of 473 was in section 900a of the Code of Civil Procedure, relating to justices' courts. In that year as part of extensive amendments made to various code sections relating to the jurisdiction and procedure of the courts, the special sections relating to the justices' courts were repealed and their contents incorporated in the general sections relating to pleadings in civil actions (Code Civ. Proc., secs. 420 to 475), which were at that time made applicable to all courts. (Code Civ. Proc. sec. 34.) Fear existed that unless the contents of former section 900a were placed in some statute, courts not of record might be held to be without those powers. [Citing the F. E. Young Co. case, *supra.*] Thus, the 1933 amendment to section 473 added nothing to the jurisdiction of the courts with respect to setting aside their judgments or orders. Independently of this provision a court may set aside at any time a judgment or order obtained by extrinsic fraud. A court may set aside at any time a judgment or order void on its face. It may set aside a default judgment or order issued without proper jurisdiction over the person of the defendant who at no time was before the court if motion for such relief is made within one year. And, of course, it may set aside a judgment or order inadvertently made upon motion within six months, under

section 473.'' (See, also, *Thompson* v. *Cook,* 20 Cal.2d 564 [127 P.2d 909].)

All of the cases cited by appellant, including the case chiefly relied upon—*People* v. *Davis,* 143 Cal. 673 [77 P. 651] —involve situations where the motion was made more than one year after entry of judgment—in the Davis case it was eight years. These cases hold that if the motion is made after one year it cannot be granted—the affected party must sue in equity. *People ex. rel. Pollock* v. *Bogart,* 58 Cal.App.2d 831 [138 P.2d 360], cited by appellant, involved a holding that the particular orders involved were not void as to the movent. While the court, by *dicta,* implies that another ''fatal defect'' to the motion may well be its lack of timeliness, the opinion does not show when the challenged orders were entered. There is no discussion of the point. If the motion was made within one year of the entry of the challenged order there was no ''fatal defect'' so far as timeliness was concerned under the rule announced in the very cases cited by the appellate court —the Davis, Richert and Smith cases, *supra.*

The appellant also contends that the motion here involved was expressly made under section 473a, and urges that, since the court has held that that section is not applicable, respondent is entitled to no relief. It is true that the motion was made under section 473a and that the trial court may have thought it was acting under that section, but what appellant overlooks is that the court possesses inherent power to set aside void judgments on noticed motion provided, where the judgment is not void on its face, the motion is made within one year of the entry of the void judgment. Here it was so made. There is no contention made that, had the motion been directed to the inherent power of the court rather than to the statutory power conferred by section 473a, the appellant could have urged any other defense or offered any other evidence than it was permitted to make or offer in this proceeding. In fact, the power conferred by section 473a is much more limited than the inherent power existing in courts of record. Inasmuch as the inherent power exists, and inasmuch as the one-year limitation was satisfied, the action of the trial court should be sustained, even if it and counsel mistakenly believed that section 473a was the controlling section.

We are satisfied that, with a few minor deletions and additions, the opinion formerly filed by this court correctly disposes of all other questions on this appeal. We therefore adopt

that former opinion, except for such deletions and additions, as the balance of the opinion of this court. Deletions from the former opinion are indicated by . . . and additions thereto are enclosed within [ ].

The State, based upon constructive service, secured a default judgment forfeiting the interests of the legal and registered owners in a certain automobile alleged to have been used by the registered owner in a narcotic offense. After that judgment became final the registered owner, Treadwell, purporting to act under section 473a of the Code of Civil Procedure, moved to vacate the judgment on the ground that he had not been personally served and had a good defense to the action on its merits. The lower court not only permitted the parties to file affidavits on the issues presented, but also held a hearing and witness testimony was introduced. Thereafter, the trial court vacated the default judgment of forfeiture. From the order vacating the judgment the State appeals.

The vehicle in question, of which Treadwell is the registered owner, was seized by inspectors of the Division of Narcotic Enforcement on December 8, 1944. Thereafter, the State instituted forfeiture proceedings pursuant to section 11610, et seq. of the Health and Safety Code. A notice of seizure and intended forfeiture was filed in the superior court on January 9, 1945, and was served on the registered and legal owners by registered mail on the same day. So far as Treadwell is concerned, and he is the one who is involved in the present proceeding, the notice was mailed to him at 3152 San Fernando Road, Glendale, Los Angeles County. This address was the one that appeared as his home address on the certificate of registration of the vehicle in question. Neither owner appeared or contested the proceeding, and on February 20, 1945, their defaults were taken, and on the same date a judgment forfeiting the vehicle to the State was entered.

On February 18, 1946, Treadwell filed a notice of motion, purporting to act under section 473a of the Code of Civil Procedure, requesting the vacation of the default judgment and permission to file an answer in the original forfeiture proceedings. The motion was based on the ground that Treadwell had never been served with the notice of seizure and intended forfeiture as required by section 11613 of the Health and Safety Code, and on the further ground that he had a valid defense to the action on the merits. The verified motion alleges that Treadwell was arrested and jailed in San Francisco on December 8, 1944, and that he remained incarcerated

until January 16, 1945; that although the state authorities knew these facts they mailed the notice of intended forfeiture on January 9, 1945, to the Glendale address; that subsequently the unopened letter was returned to the state authorities and they failed to deliver it to him in jail or otherwise.

Affidavits and counteraffidavits were introduced by both sides in an effort to support their respective positions. A hearing was held at which most of the affiants were called as witnesses. F. J. O'Ferrall, Chief of the Division of Narcotic Enforcement, averred that Treadwell was informed at the time of his arrest on December 8, 1944, by affiant and Inspectors Misterly and Fennell that the automobile would be the subject of forfeiture proceedings, and Treadwell was directed by the officers to remove all of his personal effects from the car. He also averred that he did not know when Treadwell was released from jail and that it was not his practice to keep informed as to the times when persons arrested for narcotic offenses are released. At the hearing O'Farrall produced a butane permit which had been taken from Treadwell by the narcotic officers at the time of his arrest, and which had been retained by the officers. This document is dated July 5, 1944, and gives Treadwell's address as 747 Larch Street, San Francisco. O'Ferrall likewise produced Treadwell's driver's license which had been taken from the prisoner at the time of his arrest. It had been issued November 25, 1941, and gave Treadwell's address as 1401 South Hill Street, Los Angeles. There were two changes of address officially noted on the card, one, dated July 5, 1942, giving the address of 1022 South Hill Street, Los Angeles, and the last address, dated October 19, 1942, was listed as 1328 South Hope Street, Los Angeles. Treadwell's counsel refused to offer this document in evidence and when the State offered it, the trial court sustained an objection. While the State now objects to this ruling, and while the court might well have permitted the driver's license to be admitted, its exclusion could not have been prejudicial to the State. It was dated long before the butane permit and the certificate of registration and at most would have shown that Treadwell frequently changed his residence.

O'Ferrall testified that it was the duty of the attorney general's office to file and to serve the notice of seizure. He also testified that he did not take from Treadwell his two draft cards, and that he has no recollection of ever seeing them.

Both cards gave Treadwell's then address as 747 Larch Street, San Francisco.

While O'Ferrall was on the stand the State introduced the certificate of registration and ownership of the automobile in question. It was dated June 23, 1944, showed Treadwell as the registered owner and gave his address as 3152 San Fernando Road, Glendale. That is the address to which the notice in question was sent. O'Ferrall testified that when Treadwell was arrested he told the prisoner that the officers intended to impound the car, awaiting confiscation proceedings; that he told Treadwell he would hear from the attorney general's office and be notified of the proceedings and that at that time he should take the matter up with his attorney. An envelope addressed to Treadwell dated March 23, 1944, and giving his address as 3152 San Fernando Road, Los Angeles (not Glendale), was then introduced into evidence after being identified as one of the papers taken from Treadwell at the time of his arrest. O'Ferrall stated that when arrested Treadwell told the arresting officers that the address on the certificate of registration was his.

By affidavit Marshall Burnett, a state narcotic inspector, averred that about October 1, 1945, Treadwell called on affiant and requested the return of certain documents including the butane permit, stating to affiant that, while he knew his car had been forfeited, he could make other use of the permit.

The two inspectors that arrested Treadwell, John Misterly and John Fennell, averred that they did not know when Treadwell had been released on bail; that they did not know his San Francisco address or that he was a resident of San Francisco; that at the time of his arrest Treadwell stated that he was a resident of Los Angeles and was en route there when arrested. At the hearing Misterly testified that he told Treadwell at the time of his arrest that the automobile was going to be held until confiscation proceedings were instituted; that Treadwell told the witness that his address was Terrace Hotel, at 1200 West 6th Street, Los Angeles; that he, the witness, saw the butane permit with the Larch Street address but that Treadwell stated that that address was that of his brother; that he did not know how long Treadwell was in jail; that he did not know whether the butane permit had been turned over to the attorney general's office; that he had never called at the Larch Street address.

Ralph Scott, the deputy attorney general who handled the forfeiture proceeding, averred that the notice of intended

forfeiture was mailed to Treadwell at 3152 San Fernando Road, Glendale, on January 9, 1945; that the notice, unopened, was returned to his office January 23, 1945, with a notation that the addressee had moved without leaving a forwarding address. The envelope was introduced into evidence and it shows no reason checked why it was returned to the sender. He testified that in June or early July, 1945, he informed the attorney for Treadwell that the automobile had been forfeited by a judgment in favor of the State.

Treadwell, by counteraffidavit, denied that O'Ferrall, Misterley or Fennell ever informed him that the automobile was subject to forfeiture, and denied the material portions of their affidavits and testimony. He averred that Misterly and Fennell were in court on January 14, 1945, when his motion to reduce bail was heard. He denied telling the officers at the time of his arrest, or at any other time, that he was a resident of Los Angeles, and also denied the averments in Burnett's affidavit.

Bernice Treadwell, sister-in-law of Treadwell, averred that since November, 1942, she had lived at 747 Larch Street, San Francisco, and was living there on February 1, 1945; that on February 1, 1945, Treadwell likewise resided at that address and continued to so reside until September, 1945, when the whole family moved to another San Francisco address; that during his residence at Larch Street, Treadwell received his mail at that address; that on February 1, 1945, and again a week later, Officer Misterly called at the Larch Street address and inquired for Treadwell but he was not then at home. At the hearing she testified that Treadwell first came to live at her home on Larch Street in the fall of 1943, and thereafter lived there off and on; that sometime during 1943 or 1944, Treadwell went to Los Angeles for four or five months, but still kept his room at the Larch Street home and received his mail there; that Treadwell continued to live with them on Larch Street until September, 1945; that he was living on Larch Street in December, 1944, when he was arrested; that Treadwell had told her that his car had been seized.

The attorney for Treadwell . . . [had no recollection of] having been told by Scott that the car had been seized, and averred that as Treadwell's attorney, on January 14, 1945, he moved for a reduction in amount of bail; that Misterly and Fennell were in the courtroom that day ready to prosecute Treadwell; that at that time Treadwell was in custody.

This fairly summarizes the evidence before the trial court.

That court entered its order that the judgment of forfeiture of February 20, 1945 "be and the same is hereby vacated and set aside as of the 19th day of February, 1946." From this order the State has taken this appeal.

The State makes three main contentions: (1) That the court had no power to grant the relief requested under section 473a of the Code of Civil Procedure; (2) that service on Treadwell of the notice of seizure and intended forfeiture was made in exact compliance with the provisions of the Health and Safety Code; and (3) that, in any event, any relief the court could have granted to Treadwell was barred by his laches.

 It is probably true that the provisions of section 473a of the Code of Civil Procedure do not [directly] apply to the type of proceeding here involved. That section provides that: "When from any cause the summons in an action has not been personally served on the defendant, the court may allow, on such terms as may be just, such defendant or his legal representatives, at any time within one year after the rendition of any judgment in such action, to answer to the merits of the original action." The three key words are "summons," "action" and "defendant." None of these words applies to the specialized type of proceeding here involved. In the first place, there is no provision in the law in this type of case for the issuance of a "summons." The information that need be contained in the notice of seizure is not the same or as complete as that required for a summons. (Compare Code Civ. Proc., § 407, setting forth what a summons must contain, with the holding in *People* v. *One 1933 Plymouth Auto,* 13 Cal.2d 565, 569 [90 P.2d 799], discussing what the notice of seizure must contain.)

In the second place, a forfeiture proceeding is not an "action" but a special *in rem* proceeding, equitable in nature, against the offending property. (*People* v. *One 1941 Mercury Sedan,* 74 Cal.App.2d 199, 202 [168 P.2d 443]; *Traffic Truck Sales Co.* v. *Justice's Court,* 192 Cal. 377, 384 [220 P. 306].) This type of proceeding clearly is not an "action" but a "special proceeding," as those terms are normally used. Section 22 of the Code of Civil Procedure defines an "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Section 23 of that code provides: "Every other remedy is a special proceeding." It is true that section 363 of the Code of Civil Pro-

cedure provides that "The word 'action' *as used in this title* is to be construed, whenever it is necessary so to do, as including a special proceeding of a civil nature." (Italics added.) But it should be noted that by statutory limitation this interpretation is to be given only where the word "action" appears "in this title." Section 363 is in title II of the code entitled "Time of Commencing Civil Actions." Section 473a is in title VI, entitled "Pleadings in Civil Actions." (See for a general discussion 1 Cal.Jur. p. 325, § 16.) Obviously, the rule of construction set forth in section 363 has no application to section 473a.

In the third place, section 473a by its terms is limited to actions in which the summons has not been personally served on a "defendant." The automobile and not the owner is the "defendant" in a forfeiture proceeding. [It follows that section 473a does not directly apply to proceedings of the type here involved. ■ But, as already pointed out, the last paragraph of section 473 is applicable, and the time within which the court may act is, by analogy, the one-year limit fixed in section 473a.] . . .

[In view of our holding that the last paragraph of section 473 is applicable, and that a motion made thereunder is seasonable if made within one year, it] remains to be determined whether there was a sufficient service in this case to satisfy the requirements of due process. ■ Section 473a applies primarily to cases where the service was constructive, and constructive service is permitted, and a valid judgment is secured, but the court relieves from the valid judgment because the defendant was not personally served. (*Fox* v. *Townsend,* 149 Cal. 659, 661 [87 P.82] ; *Gray* v. *Lawlor,* 151 Cal. 352, 354 [90 P. 691, 12 Ann.Cas. 990] ; *Penland* v. *Goodman,* 44 Cal.App.2d 14 [111 P.2d 913].) ■ But where the service made is an invalid service the court never acquires jurisdiction, the judgment based on such service is void, and may be collaterally or otherwise attacked . . . [by motion if seasonably made or by a suit in equity.] (See discussion and cases collected 1 Freeman on Judgments, p. 685, § 340; 15 Cal.Jur. p. 52, § 141; 7 Cal.Jur (10-Yr.Supp.) p. 348, § 141; 31 Am.Jur. p. 193, § 597; *In re Culp,* 2 Cal.App. 70 [83 P. 89] ; Code Civ. Proc., § 1916.) Therefore, the real question in this case is whether the service here involved was a sufficient service as required by law.

■ Preliminarily, it should be noted that, although the action of forfeiture is one *in rem* against the vehicle, it is

nevertheless necessary that the owner of the vehicle, under the due process clause, be given notice of the proceedings and an opportunity to be heard. That was the precise holding in *People* v. *Broad*, 216 Cal. 1 [12 P.2d 941], where the Supreme Court held that the then existing statute providing for a forfeiture of a vehicle involved in a narcotic offense was unconstitutional because it failed to provide for notice to the owner and an opportunity to be heard. (See cases collected 31 Am. Jur. p. 195, § 598.) Of course, this notice need not, in all cases, be personal notice. ▮ Where the proceeding is one *in rem*, and in some other situations, the statute may constitutionally provide for substituted or constructive service. (See cases collected 12 Am.Jur. p. 292, § 597; 12 C.J. p. 1228, et seq., § 1006, et seq.; 16 C.J.S. p. 1252, § 619(c); 1 Freeman on Judgments, p. 705, et seq., § 347, et seq.)

In the present case the State has seen fit to provide for constructive service in this type of case. Section 11612 of the Health and Safety Code provides that: "Notice of seizure and intended forfeiture proceeding shall be filed with the county clerk and shall be served on all owners." Section 11613 then provides: "Notice shall be given to each owner according to one of the following methods:

"(a) Upon each owner whose right, title, or interest is of record in the Department of Motor Vehicles, by mailing a copy of the notice by registered mail to the address as given upon the records of the Department of Motor Vehicles.

"(b) Upon each owner whose name and address is known, to the last known address of the owner.

"(c) Upon all other owners, whose addresses are unknown, but who are believed to have an interest in the vehicle, by one publication in a newspaper of general circulation in the county where the seizure was made."

There are several things to be noted about this statute. In the first place, there is no mention of personal service at all, even if personal service is feasible, although there can be no doubt that if the owner were personally served such service would be a valid service. Most constructive service statutes provide that the constructive service is permitted only where personal service cannot reasonably be had. That is true of our general constructive service statute set forth in section 412 of the Code of Civil Procedure. But section 11613 of the Health and Safety Code contains no such express limitation on its operation. It provides three methods of constructive service, that provided in subdivision "c" to be used only

when some address of the owner is unknown. Subdivisions "a" and "b" provide two methods of constructive service where some address of the owner is known to the State. In the instant case the State elected to act under subdivision "a" and sent the notice to the address given on the certificate of registration, dated June 23, 1944. This notice was mailed from the attorney general's office on January 9, 1945. The evidence most favorable to Treadwell, the respondent, shows that on that date the state officials knew or should have known the following facts:

1. That Treadwell was then in jail as a result of his arrest by the narcotic officials. He had been arrested on December 8, 1944, and was not released until January 16, 1945. On January 14, 1945, two of the state narcotic officers were present in court when a motion to reduce Treadwell's bail was made. On January 9, 1945, therefore, the state narcotic inspectors knew [or should have known] that the present address of the registered owner was the county jail, and that he was not then . . . [staying] at the Glendale address.

2. That they had in their possession a document which showed that the latest address of the registered owner was on Larch Street in San Francisco. This was disclosed by the butane permit taken from Treadwell by the arresting officers at the time of his arrest and kept by the officers until the time of trial of the present proceeding. That document is dated July 5, 1944, while the Glendale address given on the certificate of registration appears on a document dated June 23, 1944.

In determining what the duties and responsibilities of the State were under the above circumstances, certain fundamental principles must be kept in mind. Substituted service is permitted in certain cases so that justice will not be delayed or thwarted because of the inability of the plaintiff to secure personal service. ■ Due process requires, however, that the statutory type of notice provided must be of such a nature that it is reasonably probable that the party proceeded against will be apprised of the proceedings. This principle is elementary. Obviously, the Legislature in drafting a constructive service statute cannot possibly foresee all of the various factual situations to which the statute may be applicable. ■ Frequently, therefore, the Legislature does what it did in section 11613 of the Health and Safety Code, that is, provide several alternative methods of substituted service. But where alterna-

tives are thus given the statute does not empower the complainant to select arbitrarily any one of the alternatives regardless of the facts or regardless of his knowledge that such selected method will be ineffectual, where he knows [or should know] that one of the other permitted alternatives would give the party proceeded against notice. There is a fundamental requirement of fair play which controls all of the constructive service statutes. This is not merely a general principle but is also based upon the due process clause. Where alternatives are given the complainant is under a constitutional duty to select that alternative that is reasonably calculated to notify the adverse party. Stated negatively, the complainant may not select an alternative that he knows [or should know] will not notify the other party when he also knows [or should know] that one of the other alternatives, if selected, would notify the adverse party.

In 16 Corpus Juris Secundum page 1259, section 619, it is stated: "The character of the notice required to constitute due process, however, varies with the nature of the proceeding and the circumstances of the case. Due process of law is satisfied if the notice given is sufficient to make it reasonably probable that the party proceeded against would be apprised of what is going on and given an opportunity to defend. . . ."

In *McDonald* v. *Mabee*, 243 U.S. 90, 92 [37 S.Ct. 343, 61 L.Ed. 608], Mr. Justice Holmes in discussing a Texas statute that permitted published service in personal actions against Texas citizens, stated: "But it appears to us that an advertisement in a local newspaper is not sufficient notice to bind a person who has left a State intending not to return. To dispense with personal service the substitute that is most likely to reach the defendant is the least that ought to be required if substantial justice is to be done."

The same problem in relation to personal actions was discussed by the Supreme Court of the United States in *Milliken* v. *Meyer*, 311 U.S. 457, 462 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357], where it was stated: "Substituted service in such cases has been quite uniformly upheld where the absent defendant was served at his usual place of abode in the state [citing cases] as well as where he was personally served without the state. . . . Its adequacy so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard."

By analogy, the rule of these cases is applicable here. There can be no doubt that section 11613 provides several "reasonable" methods of apprising the owner of the offending vehicle of the pending proceedings against the car. Normally, notice sent to the address on file with the motor vehicle department, where no other address is known, is reasonably calculated to reach him. It is then the best means available to notify the party in question, and if he does not receive the notice it is because he has failed to notify the motor vehicle department of his change of address. However, where the State knows [or should know] the address given on the registration certificate is not the present address of the registered owner, and knows [or should know] his present address, it is obvious that the alternative provided in subdivision "b"—notice to the "last known address"—is the method "best calculated" to notify the owner. In such a case subdivision "b" provides the method, to use the language of the Mabee case, *supra,* "that is most likely to reach the defendant," or, to use the language of the Milliken case, *supra,* subdivision "b" contains "the form . . . reasonably calculated to give him actual notice of the proceedings."

Due process is a variable concept. Whether it has been violated depends upon the facts of the case. Where alternatives are given it requires that that alternative reasonably calculated to notify the person affected must be used.

The application of these principles to the facts of the present case seems obvious. The evidence most favorable to respondent, and that is the evidence we must consider as true on this appeal, shows that the narcotic inspectors had in their possession not only the registration certificate but the butane permit. That permit was dated later than the registration permit. It showed the San Francisco address as the latest address of Treadwell. But of even greater importance, the narcotic inspectors knew that they had arrested Treadwell on December 8, 1944, knew he had been placed in jail, and, as late as January 14, 1945, they knew that he was still in jail. When the notice was mailed on January 9, 1945, they were chargeable with the knowledge that such notice could not possibly have reached Treadwell, he then being in jail at their instigation. When the notice was returned on January 23, 1945, unopened, no attempt of any kind was made to ascertain Treadwell's then address, and his default was entered on February 20, 1945. At that very time, according to the

uncontradicted evidence, Treadwell then resided in San Francisco on Larch Street, and the inspectors knew or should have known that this was the latest address given by Treadwell on the butane permit.

It is no answer to say that the deputy attorney general who prepared the notice did not have actual knowledge of all of these facts. By his own admission he made no effort of any kind to ascertain Treadwell's true address. He was content to send the notice to the address on the registration certificate without any inquiry. He knew that Treadwell had been arrested on December 8, 1944, because the notice recites that the offense forming the basis of the proposed forfeiture was committed on that day. Yet the deputy made no attempt on January 9, 1945, or at any other time, to ascertain if Treadwell was then incarcerated—a fact that could easily have been determined. The State is the one that seeks to forfeit the vehicle. The State through its duly authorized agents, the narcotic inspectors, knew the true facts. It was their duty to inform counsel for the State. Certainly, the State cannot escape the results that flow from the fact of knowledge by claiming that its officers, duly authorized to enforce the narcotic act, failed to notify the State's attorney of pertinent facts. It must be held that the legal and factual situation presented is one where the State knew [or should have known] on January 9, 1945, and thereafter, that Treadwell was in jail in San Francisco, where it knew his latest residence was on Larch Street, San Francisco, but nevertheless sent the notice to Glendale knowing that the notice so sent would not, in all probability, reach Treadwell, and where they knew that there were other addresses that would reach him. Certainly it cannot be held that such procedure satisfies elementary principles of fair play or of due process. Valuable property or constitutional rights cannot be taken away by such procedure. It follows, of course, that the State did not comply with the requirements of section 11613 of the Health and Safety Code as here interpreted, and for that reason the judgment of forfeiture was void and was properly set aside.

The contention of the State that relief should be denied Treadwell because of his alleged laches is based on the theory that several state witnesses testified Treadwell learned of the forfeiture in June or July, 1945, and did not institute this proceeding until February, 1946. The answer to this contention is that Treadwell . . . denied such knowledge and

denied having the conversations in question. [His attorney had no recollection of such conversations.] The trial court decided this and all other issues in favor of Treadwell. Therefore, even if knowledge gained several months after the forfeiture were a relevant factor to be considered, which we do not here decide, we must hold that no such knowledge here existed.

The order vacating the default judgment of forfeiture is affirmed.

Bray, J., and Ogden, J. pro tem., concurred.

A petition for a rehearing was denied August 27, 1947, and appellant's petition for a hearing by the Supreme Court was denied September 25, 1947. Traynor, J., and Spence, J., voted for a hearing.