[No. C051707. Third Dist. Apr. 23, 2007.]

THE PEOPLE ex rel. JEFF W. REISIG, as District Attorney, etc., Plaintiff and Respondent, v.
THE BRODERICK BOYS, Defendant;
KEITH EDWARDS et al., Movants and Appellants.

**COUNSEL**

ACLU Foundation of Northern California, Ann Brick, Alan L. Schlosser and Jory C. Steele for Movants and Appellants.

David C. Henderson and Jeff W. Reisig, District Attorneys, for Plaintiff and Respondent.

**OPINION**

**MORRISON, J.**—By default the Yolo County District Attorney obtained a permanent injunction against the Broderick Boys, a street gang. Four men served with the injunction moved to set it aside, alleging the injunction was

void for lack of proper notice. The trial court found they lacked standing to attack the injunction because they did not admit gang membership, and they appealed.

The evidence reveals a level of gang criminality plaguing West Sacramento which might well justify injunctive relief. (See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090 [60 Cal.Rptr.2d 277, 929 P.2d 596].)

However, the injunction cannot stand because, under the facts of this case the district attorney failed to show that the Broderick Boys is an unincorporated association for the purpose of service (Corp. Code, §§ 18035, subd. (a), 18220) and, in any event, the district attorney did not take steps "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover Tr. Co*. (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652] (*Mullane*).) It is not necessary to *actually* inform the other party, but the "means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (*Id.* at p. 315; reaffd. in *Jones v. Flowers* (2006) 547 U.S. 220, 228–229 [164 L.Ed.2d 415, 427, 126 S.Ct. 1708] (*Jones*).)

The district attorney served only Billy Wolfington, a single gang member of unknown rank, trusting that he would spread the word. However, when he was served, Wolfington immediately said we would not appear in the proceeding, i.e., he would not oppose the People's request for an injunction against the Broderick Boys. Under these circumstances, even if service on Wolfington complied with state law regarding service of process, the service on him alone was not reasonably calculated to apprise the gang and its other members of the pending action.

The fact appellants are not named in the complaint and did not admit membership in the gang does not mean they lack standing to challenge service. The district attorney has alleged that appellants *are* gang members, which is why they were served with the injunction. In fact, one appellant has been arrested for allegedly violating the injunction. California Supreme Court decisions allow a nonparty who has been "aggrieved" by a judgment to move to vacate it and appeal from the denial of that motion, thereby achieving party status. This is the procedure used by appellants in this case. Other cases explain that a nonparty served with an injunction may challenge the injunction in the court that rendered it. Appellants were sufficiently aggrieved by the injunction served on them to confer standing to attack it.

We reverse with directions to grant the motion to set aside the judgment granting the permanent injunction.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. The Complaint and Preliminary Injunction

On December 30, 2004, the district attorney filed a complaint to enjoin a nuisance, namely, the Broderick Boys, a Norteño criminal street gang, known by various aliases, alleged to be an unincorporated association. Does 1 through 400 were named, and the complaint described, *but did not name as defendants*, 10 alleged members, including "Billy Wolfington (Bouncer)." The complaint sought an injunction to create a "Safety Zone" within West Sacramento, which would in part prohibit gang members and agents from associating with other "known" members and would impose a curfew on gang members, with exceptions, such as for travel to work, school and church activities.

When he filed the complaint, the district attorney also sought a preliminary injunction, supported by a request for judicial notice of criminal records of 12 alleged gang members, some of whom were among the 10 named in the complaint, including Billy Wolfington, who had been required by a court order to register as a gang member after he was convicted of drug and weapons charges.

The district attorney also submitted declarations from peace officers describing the activities of the Broderick Boys. The Evidence Code allows expert evidence on the workings and hierarchy of a gang. (Evid. Code, § 801; *People v. Williams* (1997) 16 Cal.4th 153, 193–194 [66 Cal.Rptr.2d 123, 940 P.2d 710]; see *United States v. Easter* (9th Cir. 1995) 66 F.3d 1018, 1020–1021.) For purposes of this appeal we accept as true the following facts.

The Broderick Boys is the largest street gang in West Sacramento, numbering over 350 members of mixed race—mostly Hispanic and Caucasian—and mixed gender, ranging in age from 12 to mid-40's. The gang is connected to the Nuestra Familia prison gang and uses the color red and certain symbols in clothing, graffiti and accessories. Its principal enemy is an affiliate of the Mexican Mafia prison gang, in the Sureño family of gangs.

The Broderick Boys has a hierarchical structure. The "foot soldiers" are typically younger men and women. Members who are a bit older and perhaps have served time for crimes, up to their mid-20's in age, are "hommies." Still older members, up to mid-30's in age, are "veteranos" who generally have families and are no longer on the street, but "they're kind of controlling and watching over things in the shadows. . . . [T]hey've earned the right to lean back and to supervise." "The top guys that make the major decisions, all the way up, they are . . . your shot callers." Entry into the gang for males is by being "jumped in," that is, by being beaten up by several members; for females entry is by being "sexed [in]," that is, by submitting to sex with multiple members. Some relatives or friends of members may bypass these rituals. No nonmember would have a gang tattoo, because "that's going to get you shot or beaten or both." Members may move away and there is a procedure for "jumping out," but it is rarely used.

The declarations show that Billy Wolfington is a member of the Broderick Boys, but say nothing about his rank.

The lead investigator declared that gang members communicate by cell phones and share information about "probation searches or other police activity, or rivalries with other gangs." The communications extend to members in county jail and state prison. "What I've seen is that as soon as we start hitting a specific gang with parole or probation compliance searches, at the beginning we're seeing a lot of good information, intelligence, guns, so forth, and then toward the end all of a sudden we're coming up dry, everything is gone." "Gangsters definitely have a very active network. They let each other know if heat is coming down from police or from other gangs. You can talk to one gangster about a feud that they're having with a particular gang and go on the other side of town and run into another gangster and he'll know." "[I]f I wanted to contact [the Broderick Boys], the way I'd do it is to go out and find a gang member on the street. They'll pass the word quickly."

The declarations showed that the Broderick Boys is not registered as a California corporation, limited liability company or partnership, and it has no address.

A declaration from District Attorney Jeff W. Reisig, then a deputy district attorney, describes his experience in gang suppression and states "I have reviewed numerous gang injunctions issued by Superior Court Judges throughout California. It is the well established practice to allow service on

the gang by service on one or more gang members." In support, he attached orders from two separate Los Angeles County Superior Court gang injunction cases—known as the *Krazy Ass Mexicans* and *Canoga Park Alabama* cases—in which Judge Dzintra Janavs ordered service "on any one or more" named gang members of an order to show cause (OSC).

On January 3, 2005, the trial court issued an OSC for a preliminary injunction. The trial court ordered service "on any one or more" of the 10 persons described in the complaint. On January 5, 2005, the district attorney filed a proof of service on Billy Wolfington.

On January 24, 2005, the trial court issued a preliminary injunction. Only the district attorney appeared.

### B. The Permanent Injunction

On February 3, 2005, the district attorney dismissed Does 1 through 400, the court clerk entered a default, and the trial court signed a permanent injunction, as requested. The judgment recites that the Broderick Boys is a criminal street gang and the injunction runs against "Defendant Broderick Boys aka BRK aka BSK aka Norteno aka Norte aka XIV, its members, agents, servants, employees, and all persons acting under, in concert with, for the benefit of, at the direction of, or in association with them or any of them."

### C. Motion to Set Aside

On July 28, 2005, Keith Edwards, Angelo Velazquez, Jason Swearengin and Benjamin Juarez moved to set aside the default judgment and the default. None was named in the district attorney's papers. Each declared he lived in the safety zone and had not heard of this action until being served with the permanent injunction; Edwards was later arrested for allegedly violating the curfew. Each declared that had he known of the action *and that the authorities believed the injunction would apply to him*, he would have contacted an attorney. When served, none was told by what criteria their alleged gang membership had been determined by the authorities. The police had served 80 people with the permanent injunction and expected to serve 350. Appellants asserted they had a viable defense to the injunction generally and a defense to being included within its sweep.

Appellants' state law claims were that the Broderick Boys was not an unincorporated association, and service on Billy Wolfington did not comply with California law because no mailing was done and there was no showing of Wolfington's gang status. Their federal claim was that service on one alleged gang member of unknown rank violated due process.

Appellants tendered three categories of evidence as follows:

(1) Declarations showed appellants' addresses were known by the authorities: Velazquez was a registered narcotics offender; the Yolo County probation department knew where Juarez lived; Edwards's California identification card bore his address; and Swearengin's parole officer had his address.

(2) An investigator declared that of the 51 alleged gang members named in the district attorney's papers, he was able to find possible addresses for 24 of them, using the same computer program the district attorney's investigator had used in his searches about the Broderick Boys.

(3) A request for judicial notice of Yolo County court records showed that 24 persons named in the district attorney's papers were in state prison, on probation, or on bail due to prosecutions by the Yolo County District Attorney.

## D. Opposition

The district attorney opposed the motion, both because appellants allegedly lacked standing and on the merits. He tendered declarations showing that when Billy Wolfington was served with notice of the OSC before the complaint was filed—while at the police station to complete his gang registration papers—he admitted gang membership but said he would not appear; within 20 minutes he was seen talking to another gang member, while a third member was "several" yards away. The lead officer declared that within 10 minutes of one gang member being served with the injunction, another contacted the officer about it; two members, including appellant Velazquez, went to the police station to be served; he also opined that all appellants were gang members. The district attorney argued service was proper, though he later conceded that service on one member of an unincorporated association was "not necessarily constitutionally adequate."

## E. Reply

Appellants sought judicial notice of records from the *Kick Ass Mexicans* and *Canoga Park Alabama* cases, showing that *seven* members of each of those gangs had been served. They also sought notice of records indicating that service on many gang members was the normal practice among prosecutors and that in one Ventura County case the trial court also ordered publication in a local newspaper.

## F. Trial Court Ruling

The trial court denied as irrelevant appellants' requests for judicial notice and denied their motion to set aside the default and default judgment. The

court reasoned that because appellants did not admit gang membership, they lacked standing. Appellants timely appealed. The appeal lies. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 155, pp. 220–221.)

## DISCUSSION

### I. Appellants Have Standing to Challenge the Injunction

The trial court reasoned that because appellants did not declare that they were members or agents of The Broderick Boys, they lacked standing to attack the injunction; that although they were served with the injunction, and the authorities believe they *are* gang members, their remedy is to wait for any attempt to enforce the injunction against them or file a declaratory relief action. The district attorney observes that a trial court "may, *on motion of either party* . . . set aside any void judgment" (Code Civ. Proc., § 473, subd. (d), italics & boldface added) and reasons that because appellants are not "parties," they lack standing to set aside the judgment.

██ We agree with the trial court and the district attorney that a nonparty *could* attack the injunction in a declaratory relief action (Rest.2d Judgments, § 76) or in defense of contempt charges (*People v. Gonzalez* (1996) 12 Cal.4th 804 [50 Cal.Rptr.2d 74, 910 P.2d 1366]).

But there is a well-settled procedure by which an aggrieved person may move to set aside a judgment and then appeal if the motion is denied, *thereby achieving party status.* (*Luckenbach v. Laer* (1923) 190 Cal. 395, 398 [212 P. 918]; *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 15–16 [84 Cal.Rptr.2d 715]; 9 Witkin, Cal. Procedure, *supra,* Appeal, §§ 153, p. 218, 176, p. 233, 181, p. 237.)

"[T]o the end that justice may be done, one appeal is permitted from an order refusing to vacate a judgment or decree when, for reasons involving no fault of the appealing party, he has never been given an opportunity to appeal directly from the judgment or decree. These are cases where one's rights or interests are injuriously affected by a judgment or by an appealable order in litigation to which he is not formally a party, . . . *In such cases it is always permissible for the one injured to make himself a party to the litigation, if he has not been a party, and after he has thus submitted to the jurisdiction of the court, to move the vacation of the decree or appealable order injuriously affecting his interest, and to appeal if the motion be denied.*" (*Estate of Baker* (1915) 170 Cal. 578, 582 [150 P. 989], italics added.)

The effect of their motion was to make appellants *parties.* (*Elliott v. Superior Court* (1904) 144 Cal. 501, 509 [77 P. 1109]; *Estate of Baker, supra,*

170 Cal. at p. 582; *Skolsky v. Electronovision Productions, Inc.* (1967) 254 Cal.App.2d 246, 248–250 [62 Cal.Rptr. 91].)

Nor need appellants admit gang membership, if they are persons "whose rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953].) We preface our analysis by noting that Code of Civil Procedure section 473, the source of their claim, is a remedial statute, interpreted broadly to permit adjudications on the merits. (See *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 255–256 [121 Cal.Rptr.2d 187, 47 P.3d 1056]; *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 885–886 [151 Cal.Rptr. 285, 587 P.2d 1098] [discussing aggrieved parties].)

First, appellants are not "strangers" to the case, as the district attorney stated at oral argument. He also stated "overwhelming evidence exists that proves" each appellant is a gang member, and the lead gang officer so opined; that is why appellants were served with the permanent injunction. In fact, appellant Edwards was arrested for violating the curfew. Thus, it is not accurate to call them "strangers" to the case.

Second, the injunction imposes limitations on otherwise lawful activities on any person who is a gang member *or acting with a gang member.* (See *Planned Parenthood Golden Gate v. Garibaldi* (2003) 107 Cal.App.4th 345, 353 [132 Cal.Rptr.2d 46]; 6 Witkin, Cal. Procedure, *supra*, Provisional Remedies, § 391, p. 318.) For purposes of a gang injunction, a person is a member of a gang if he or she "is a person who participates in or acts in concert with an ongoing organization, association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of acts constituting the enjoined public nuisance, having a common name or common identifying sign or symbol and whose members individually or collectively engage in the acts constituting the enjoined public nuisance. The participation or acting in concert must be more than nominal, passive, inactive or purely technical." (*People v. Englebrecht* (2001) 88 Cal.App.4th 1236, 1261 [106 Cal.Rptr.2d 738] (*Englebrecht*).) That is, a person is subject to the injunction *if the state proves by clear and convincing evidence that the above definition is met.* (*Id.* at pp. 1256–1257.) But a person *served* with the injunction would not always be in a position to make a sound judgment about whether to defy it with the hope or expectation of defeating a contempt action. To say appellants have no standing to attack the injunction unless they incriminate themselves by admitting they are gang members is not reasonable.

Third, contrary to the trial court's view, appellants, having been served with the injunction, could be liable for contempt by aiding or acting in

concert with a member, whether or not they were a member or "affiliated" with the gang. (See *People ex rel. Gallo v. Acuna, supra,* 14 Cal.4th at pp. 1122–1125; *People v. Saffell* (1946) 74 Cal.App.2d Supp. 967, 978–979 [168 P.2d 497].)

■ As our Supreme Court tells us, there are two ways an affected person may challenge an injunction: "In this state a person affected by an injunctive order has available to him two alternative methods by which he may challenge the validity of such order on the ground that it was issued without or in excess of jurisdiction. *He may consider it a more prudent course to comply with the order while seeking a judicial declaration as to its jurisdictional validity.* [Citation.] On the other hand, he may conclude that the exigencies of the situation or the magnitude of the rights involved render immediate action worth the cost of peril. In the latter event, such a person . . . may disobey the order and raise his jurisdictional contentions when he is sought to be punished . . . ." (*In re Berry* (1968) 68 Cal.2d 137, 148–149 [65 Cal.Rptr. 273, 436 P.2d 273], italics added [nonparties charged with contempt].)

Although the remedy of suffering an arrest and defending a contempt charge is *available,* it is not generally *prudent.* (*In re Berry, supra,* 68 Cal.2d at pp. 148–149.) An earlier California Supreme Court case made a similar point: "To compel defendant labor unions to seek redress by the indirect method of violation of the terms of the injunction and defense of a contempt proceeding, or *certiorari* or *habeas corpus* to secure relief from a contempt commitment, would be to relegate them to a remedy which is indeed circuitous. [Citation.] An independent action in equity would be almost as dilatory and cumbersome." (*Sontag Chain Stores Co. v. Superior Court* (1941) 18 Cal.2d 92, 96 [113 P.2d 689] (*Sontag*).)

■ Further, a declaratory relief action could founder on the rule that a collateral attack based on lack of jurisdiction may not rely on extrinsic evidence. (See 8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, §§ 11–12, pp. 517–520, 22, p. 526.) To ascertain whether the method of service was reasonable, facts outside the proof of service would be relevant, as we explain.

Thus, we conclude that appellants, who are alleged by the authorities to be gang members *and for that reason* were served with the injunction and threatened with its enforcement, are sufficiently aggrieved by it to allow them to move to vacate the injunction and become parties to the action, without having to admit membership in the gang.

## II. The Injunction Is Void for Lack of Adequate Notice

Although the trial court did not pass on the adequacy of service, we will not remand the issue to the trial court. The undisputed facts about service of process in this case, and the requests for judicial notice on appeal, provide an adequate basis for us to address the legal issue of the propriety of the service of process. (See *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 828 [26 Cal.Rptr.3d 104].)

■ Many notice cases involve *property* rights, but notice requirements are not less for *liberty* interests. (See *Mennonite Board of Missions v. Adams* (1983) 462 U.S. 791, 795 [77 L.Ed.2d 180, 185, 103 S.Ct. 2706] (*Mennonite*); *Albrecht v. Superior Court* (1982) 132 Cal.App.3d 612, 619 [183 Cal.Rptr. 417] ["Notice and an opportunity to be heard must precede deprivations of life, liberty or property"].)

There is no one test for adequacy of notice, but the United States Supreme Court instructs us to look at the realities of the case in order to determine whether the notice given was reasonably calculated to inform people of the pendency of the proceedings affecting their interests. "In determining the constitutionality of a procedure established by the State to provide notice in a particular class of cases, 'its effect must be judged in the light of its practical application to the affairs of men as they are ordinarily conducted.' " (*Greene v. Lindsey* (1982) 456 U.S. 444, 451 [72 L.Ed.2d 249, 256, 102 S.Ct. 1874]; see *Walker v. Hutchinson City* (1956) 352 U.S. 112, 115 [1 L.Ed.2d 178, 182, 77 S.Ct. 200] [no "rigid formula . . . ; notice required will vary with circumstances and conditions"].)

Actual notice is not required, "only a method reasonably certain" to give notice. (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967 [26 Cal.Rptr.2d 460] (*Evans*); see *Jones, supra,* 547 U.S. at p. 226 [164 L.Ed.2d at p. 425].) Also, "heroic efforts" are not required. (*Dusenbery v. United States* (2002) 534 U.S. 161, 170–171 [151 L.Ed.2d 597, 607, 122 S.Ct. 694] (*Dusenbery*).) But the method " 'must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.' " (*Jones, supra,* at p. 229 [164 L.Ed.2d at p. 427].) As we will explain, the method used was not "reasonably calculated, under all the circumstances," to achieve results. (*Mullane, supra,* 339 U.S. at p. 314 [94 L.Ed. at p. 873].)

### A. The District Attorney's Showing

To establish the adequacy of service in this case, the district attorney relies on the following three points:

(1) Service on Billy Wolfington met the requirements of California law regarding service on unincorporated associations.

(2) The manner of service reflected a custom by California prosecutors in other gang injunction cases.

(3) The Broderick Boys has an internal communications network such that notice to Billy Wolfington would spread actual notice throughout the gang structure.

On examination, none of these reasons proves sound.

### 1. Compliance with California Law

The district attorney's state law theory is as follows: The Broderick Boys is an unincorporated association; an association which has no officers or agent for service of process may be sued by service on any member; because the gang has no officers or agent for service of process and Billy Wolfington is a member, service on Wolfington complied with California law.

First, the evidence presented at the default hearing does not show that the Broderick Boys is an unincorporated association. Second, even if it was, service on one member of unknown rank who disavowed any intention to appear was insufficient under both state and federal law.

### a. A Street Gang as an Unincorporated Association

■ A summons may be served on an unincorporated association by serving an agent designated with the California Secretary of State, a president, vice-president, secretary, treasurer, general manager or person authorized to accept service. (Code Civ. Proc., § 416.40, subd. (b).) If no agent has been designated and no other method is feasible, a court "may make an order that service be made . . . by delivery of a copy of the process to one or more of the association's members designated in the order and by mailing a copy of the process to the association at its last known address. Service in this manner constitutes personal service upon the unincorporated association." (Corp. Code, § 18220.) The trial court issued an order in line with this section, excusing the need for mailing because the Broderick Boys does not have an address.

The complaint alleges the Broderick Boys is "an unincorporated association, consisting of two or more individuals joined together for profit, social, recreational, and other common purposes, which acts by and through its

members, both individually and collectively." It also asserts "fairness requires" that the gang be treated as a legal entity. In treating the Broderick Boys as an association it followed what has been a practice in gang injunction cases. (See Castorena, Civil Gang Injunction Pleadings Manual (Cal.Dist.Attys.Assn. 2000) p. III-315 (Castorena).)

But *the next sentence of the complaint* alleges the Broderick Boys is a criminal street gang, that is, an "ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (Pen. Code, § 186.22, subd. (f).) The lead officer's declaration details the criminal acts of the gang and concludes "there are no social benefits of the gang." At oral argument in this court the district attorney characterized it as a domestic terrorist organization.

In California, " 'Unincorporated association' means an unincorporated group of two or more persons joined by mutual consent *for a common lawful purpose*, whether organized for profit or not." (Corp. Code, § 18035, subd. (a), italics added.) The record does not show that the Broderick Boys—a criminal gang under the Penal Code, a "terrorist" group with "no social benefits"—was formed, at least in part, for a common lawful purpose.

We are aware, as appellants concede, that the "lawful purpose" phrase was added effective January 1, 2005, after the complaint was filed but before the summons was served. (See Stats. 2004, ch. 178, § 10.) But that codified the existing common law rule that an unincorporated association must be formed for a lawful purpose. (7 Cal.Jur.3d (2003) Associations and Clubs, § 7, p. 127 ["lawful purpose"]; 7 C.J.S. (2004) Associations, § 2, p. 26 ["legitimate purpose"]; *Exeter Hosp. Med. Staff v. Bd. of Trustees* (2002) 148 N.H. 492, 496 [810 A.2d 53, 56]; *Peoples Gas System v. Acme Gas Corp.* (Fla.Dist.Ct.App. 1997) 689 So.2d 292, 298, fn. 8.) The amendment made explicit what was implied. We have not found any reference to a criminal group being treated as an unincorporated association in California or elsewhere. (Cf., e.g., *Barr v. United Methodist Church* (1979) 90 Cal.App.3d 259, 265–267 [153 Cal.Rptr. 322] [not mentioning lawful purpose but describing lawful entities]; *Camm v. Justice's Court* (1917) 35 Cal.App. 293, 299 [170 P. 409] [reading "business" in predecessor statute to refer to a group "for the purpose of transacting as a single body any kind of business, whether for profit to themselves or for charitable or philanthropic purposes"], approved by *Jardine v. Superior Court* (1931) 213 Cal. 301, 317–318 [2 P.2d 756] (*Jardine*); *Herald v. Glendale Lodge No. 1289* (1920) 46 Cal.App. 325, 329–330 [189 P. 329].)

■ Second, even if the addition of the "lawful purpose" phrase to the statute *did* change California law, *the new law would govern this case.* The district attorney is seeking injunctive relief to remedy the nuisance caused by the Broderick Boys. Because an injunction governs future conduct, the court applies the law existing at the time the decree issues, if the law has changed since the filing of the complaint. (*Sontag, supra,* 18 Cal.2d at pp. 94–95; *United Food & Commercial Workers Union v. Superior Court* (2000) 83 Cal.App.4th 566, 575–576 [99 Cal.Rptr.2d 849] ["once [new statutes] took effect at the beginning of this year, the unions were entitled to invoke the new law as a basis for invalidating the existing preliminary injunction and for obtaining summary judgment in Gigante's action for a permanent injunction"].)

■ We are aware that other California cases have treated street gangs as unincorporated associations, but no case has been cited to us which addresses the "lawful purpose" issue. Cases are not authority for points not considered. (*Hart v. Burnett* (1860) 15 Cal. 530, 598.)

An entity could have both lawful and unlawful purposes. But the evidence at the default hearing fails to show *any* lawful purpose of the Broderick Boys. Because the district attorney relies on the method of service applicable to unincorporated associations, and the record does not show that the Broderick Boys meets the statutory definition of such an entity, the method of service *does not meet the requirements of state law.*

In any event, as we will explain, even if the district attorney could prove that the Broderick Boys was formed for at least some lawful purpose, service on Wolfington alone, a member of unknown rank within the Broderick Boys who promptly disavowed any intention of appearing, was not sufficient under case law requirements for service of unincorporated associations.

### b. Service on a Single Member of an Association

The statute provides that where an association lacks an agent or defined officers, "one or more" members may be served. (Corp. Code, § 18220.) In *some* cases service on one member may be sufficient. (*Jardine, supra,* 213 Cal. at p. 310 [discussing a different type of challenge to a predecessor statute, observing "it is perfectly consistent with due process to provide that jurisdiction over an association doing business shall result from service upon one or more of its members"].) But "one or more" does not always mean *one* is enough.

■ We must if possible avoid a statutory construction raising serious constitutional doubts. (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 59–60 [195 P.2d 1]; *Walton v. City of Red Bluff* (1991) 2 Cal.App.4th 117,

132–134 [3 Cal.Rptr.2d 275] [applying rule to avoid possible federal due process notice violation].) As applied to the facts of this case, we construe the statute (Corp. Code, § 18220) in harmony with authorities addressing due process notice problems in serving notice on unincorporated associations. Those authorities hold that service on a single member of an unincorporated association, to be effective, *must be on* "a person of sufficient character and rank to make it reasonably certain that the unincorporated association will be apprised" of the case. (*Bailey v. Transportation-Communication Employees Union* (N.D.Miss. 1968) 45 F.R.D. 444, 447; see *O'Connor v. Altus* (1975) 67 N.J. 106, 128 [335 A.2d 545, 556] ["a two-pronged test that the representative should be so integrated with the organization that he will know what to do with the papers and that he or she should stand in a position as to render it fair, reasonable and just to imply the authority to receive service"]; *Bailey v. Boilermakers Local 667 of Intern. Broth.* (N.D.W.Va. 1979) 480 F.Supp. 274, 278; *Operative Plasterers', etc., Ass'n v. Case* (D.C. Cir. 1937) 68 App.D.C. 43 [93 F.2d 56, 65] [" 'whose character in relation to the association is such that it could be reasonably expected that he would give notice,' " quoting *Brotherhood of Railroad Trainmen v. Agnew* (1934) 170 Miss. 604 [155 So. 205, 207]]; *Hanley v. Sheet Metal Workers International Ass'n* (1956) 72 Nev. 52, 55 [293 P.2d 544, 545] ["such as to give reasonable assurance that notice of the institution of proceedings will promptly be conveyed to those having the responsibility of defending"]; *American Football League v. National Football League* (D.Md. 1961) 27 F.R.D. 264, 269 ["so integrated with the organization that he will know what to do with the papers"].)

Even when representative actions were used to enable associations to appear, absent a statutory norm for service, service "upon the principal officer of the association" sufficed. (Sturges, *Unincorporated Associations as Parties to Actions* (1924) 33 Yale L.J. 383, 387, 400–401; see *Hamilton v. Del. Motor Trades* (1931) 34 Del. 486 [4 W.W. Harr. 486, 155 A. 595, 596] [absent a statute, service on president held good].) "Such conclusion would seem to carry out fairly the requirement of reasonable notice in light of the examples already noted. It is workable." (Sturges, *supra*, 33 Yale L.J. at p. 401.)

The California Law Revision Commission has observed: "[Former] Code of Civil Procedure section 388 provides that service upon an unincorporated association may be made by serving any member. The legislative assumption seems to be that each associate is actively interested in the organization's welfare and will transmit the papers with which he has been served to the appropriate officers. This may be the case where the defendant entity is a partnership; however, if it is a social club, a large labor organization, or even a church, there is no real assurance that the member served will notify the association's officers. *Under the statute, a plaintiff can enhance the possibility of default by carefully arranging to serve a member who is disinterested or*

*even hostile to the association.*" (8 Cal. Law Revision Com. Rep. (1967) p. 936, italics added.)

Based on these authorities we construed the "one or more" provision of Corporations Code section 18220 to encompass the rule that service on "one" member must be on a responsible member, otherwise service on "more" than one is required.

The district attorney knew of "veteranos" and "shot callers" yet served only Billy Wolfington, whose rank is unknown but who was characterized as a "soldier" at oral argument in this court; further, when served Wolfington disavowed any intention to appear. Thus, whether he would tell others was a matter of chance.

On this record, service on Billy Wolfington alone was insufficient under state law absent proof that he was of sufficient rank and character within the Broderick Boys that it is reasonable to infer that service on him effectively apprised the gang of the pendency of the legal proceeding.

As we explain, neither of the next two arguments tendered by the district attorney demonstrate that service on one gang member of unknown rank was reasonably calculated to achieve notice in this case, therefore such manner of service does not meet the *Mullane* federal due process standard.

## 2. Custom in Gang Injunction Cases

The district attorney asserts he followed the method of service used in other cases, indicating a practice or custom of serving a single gang member. But the records in both the *Kick Ass Mexicans* and *Canoga Park Alabama* cases show that the prosecutors in those cases served *seven* members in each case.

The trial court stated that there was no *legal* requirement for the district attorney to serve all gang members. That is not what appellants argued: They contended that their requests for judicial notice showed—as a *factual* matter—both that the practice in other counties established a norm of serving *many* members and that the records of Yolo County showed that *many* members of *this* gang could have been located and served (because they were in prison, on bail, and so forth).

This evidence was relevant as it had a "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The evidence is relevant to the feasibility of other methods of service, which in turn had a tendency in reason to show that

the method employed was not "reasonably calculated" to apprise the gang of the suit. (*Mullane, supra*, 339 U.S. at p. 314 [94 L.Ed. at p. 873].) Because this evidence is relevant, we grant appellants' renewed request on appeal for judicial notice of these court records.

In the reported cases multiple members were named and served. (See *People ex rel. Gallo v. Acuna, supra*, 14 Cal.4th at p. 1113 [38 members named, 24 served]; *Iraheta v. Superior Court* (1999) 70 Cal.App.4th 1500, 1502 [83 Cal.Rptr.2d 471] [gang and 92 members]; *Englebrecht, supra*, 88 Cal.App.4th at p. 1242 [gang and 28 members].) In the cases subject to judicial notice, many members were named and served in San Diego and Santa Barbara County cases, as in the two Los Angeles County cases discussed above. In one Ventura County case—which appellants assert is the only other case in which the gang was named as the sole defendant—the trial court on its own motion ordered that service be accomplished both by serving several gang members *and by publication in a newspaper of record.*

Thus, there is a practice in California of serving notice on several gang members. (See also Castorena, *supra*, Civil Gang Injunctions Pleadings Manual, p. III-315 ["Make sure that the defendants you serve [as gang representatives] are admitted gang members"].)

### 3. The Gang's Internal Network

Finally, the district attorney asserts that the gang has a sophisticated internal communications network by means of which members communicate on matters of common interest. Thus, notice to Billy Wolfington would spread news of the pending case "like wildfire" and therefore was a reasonable method of service.

The lead officer declared that gang members communicate by cell phones and share information—including with incarcerated members—about different types of law enforcement actions, and "if I wanted to contact [the Broderick Boys], the way I'd do it is to go out and find a gang member on the street. They'll pass the word quickly." That officer's declaration in opposition to the motion to set aside elaborates as follows:

"3. On December 29, 2004, I was present in the parking lot of the West Sacramento Police Department when Investigator Rick Gore of the Yolo County District Attorney's Office served Mr. Wolfington with the ex parte

notice of the hearing to seek a preliminary injunction and injunction in this case. This hearing was scheduled for January 3, 2005. Mr. Wolfington was at the police department to pick up his gang registration card. When Investigator Gore gave Mr. Wolfington the notice, he asked Mr. Wolfington if he was a Broderick Boy and Mr. Wolfington responded, 'Yeah.'

"4. Investigator Gore told Mr. Wolfington that there would be a court hearing on Monday, January 3, 2005, at 8:30 a.m., if he wanted to appear. Investigator Gore also told Mr. Wolfington that he was looking for any other Broderick Boys who would want to appear. Mr. Wolfington told Investigator Gore that he would not be appearing.

"5. After Mr. Wolfington was served, I went to the vicinity of Fifth and C Streets in West Sacramento with Investigator Gore. This location is also within the Safety Zone. Within twenty minutes of the time when Mr. Wolfington was served, I saw him talking to Douglas Allen, another validated Broderick Boy. Several yards away was Michael Hernandez, AKA 'Snoopy', a third validated Broderick Boy.

"6. When asked what they were talking about, both Mr. Wolfington and Mr. Allen denied even talking to the other.

"7. I am aware of numerous instances in which the Broderick Boys have communicated informally with each other regarding issues of mutual interest. Such communication is critical to the survival of the gang and its members. In addition to the example above, other examples of such communication are:

"A. Within ten minutes of Rudy Tafoya, a Broderick Boy, being served in West Sacramento with the [permanent] injunction in this case, I received a communication from a Broderick Boy in Sacramento wanting to know what was going [on] with Tafoya and describing the police activity that occurred when [Tafoya] was served.

"B. At least two Broderick Boys, David Sandoval and Angelo [Velazquez], one of the non-party movants in this case, appeared of their own volition to be served with the injunction at the [police station]."

These declarations do not support the claim made at oral argument that there would be any retaliation against Billy Wolfington for not triggering an alarm, they merely show that gang members use cell phones and communicate about police raids and similar actions. Absent evidence that Billy Wolfington occupied some position of authority within the gang, it is

speculation to infer that he would necessarily pass along word of a court injunction; indeed, a gang member is less likely to be responsible about such matters than a corporate employee: "In a situation where the defendant is an unincorporated association formed for limited purposes, with a membership of the managements of over fifty buildings, service on any one of the members, without more, cannot reasonably be expected to reach the association as a whole, nor can we say that such service is reasonably calculated to do so. It may be that news of the summons and complaint would spread among some of the building-members; however, due process requirements cannot be met by notice through hearsay or rumor. Some more direct nexus between service and notice is required." (*Marchwinski v. Oliver Tyrone Corp.* (W.D.Pa. 1978) 461 F.Supp. 160, 166.)

The three claims by the district attorney we have just discussed fail to show that the method of service was "reasonably calculated" to achieve results, as required. (*Mullane, supra,* 339 U.S. at p. 314 [94 L.Ed. at p. 873].) In the next section we explain that there were other feasible methods which could have been employed and because those methods were not attempted, the manner of service fails the *Mullane* federal due process standard.

### B. Alternative Methods of Service

A court passing on the adequacy of notice should consider what else might have been done. (*Jones, supra,* 547 U.S. at pp. 229–233, 234–238 [164 L.Ed.2d at pp. 427–429, 430–433].) "[W]e have required the government to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." (*Id.* at p. 230 [164 L.Ed.2d at p. 428].) Where one party knows facts about the other, such as his "inexperience or incompetence," extra efforts may be required. (*Mennonite, supra,* 462 U.S. at p. 799 [77 L.Ed.2d at p. 188].)

"Where alternatives are given the complainant is under a constitutional duty to select that alternative that is reasonably calculated to notify the adverse party. . . . [T]he complainant may not select an alternative that he knows [or should know] will not notify the other party when he also knows [or should know] that one of the other alternatives, if selected, would notify the adverse party." (*People v. One 1941 Chrysler Sedan* (1947) 81 Cal.App.2d 18, 33–34 [183 P.2d 368], disapproved on another point in *People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 303 [231 P.2d 832]; see *Mennonite, supra,* 462 U.S. at p. 799 [77 L.Ed.2d at p. 188] [choosing one method not reasonable where " 'inexpensive and efficient' " alternative exists].)

First, the district attorney could have served veteranos or shot callers, rather than one member of unknown rank, and could have served a significant

number of gang members. The record shows that shortly after obtaining the permanent injunction the police were able to serve many alleged gang members. They could have served many or all of those same people *before* obtaining the permanent injunction. For example, Michael Hernandez ("Snoopy") was one of the 10 designated alleged members on whom service was authorized by the trial court, and he was seen by peace officers, along with alleged member Douglas Allen, about 20 minutes after Wolfington was served. Hernandez could easily have been served at that time.

 Second, the district attorney could have served the gang members known to be in jail or prison. (*Robinson v. Hanrahan* (1972) 409 U.S. 38 [34 L.Ed.2d 47, 93 S.Ct. 30] [state knew defendant was in jail; service at home was not reasonable].) Where statutes require regulated businesses to file addresses with the government, mailing notices to those addresses is reasonable. (*Miller Family Home, Inc. v. Department of Social Services* (1997) 57 Cal.App.4th 488, 491–493 [67 Cal.Rptr.2d 171] [community care licensee]; *Evans, supra,* 21 Cal.App.4th at pp. 966–972 [auto dismantler].) Although three of the appellants filed their addresses with the authorities, the district attorney did not serve them, or other alleged gang members with similarly filed addresses. (Cf. *Mennonite, supra,* 462 U.S. at p. 798 & fn. 4 [77 L.Ed.2d at p. 187] ["We assume that the mortgagee's address could have been ascertained by reasonably diligent efforts"].) Looking up some addresses is not too much to expect.

Third, the district attorney could have obtained approval to publish notice in the press. Instead, he waited until the permanent injunction was a fait accompli to publicize it.

 In sum, although a defendant is not entitled to "heroic efforts" or the best possible notice (*Dusenbery, supra,* 534 U.S. 161 at pp. 170–171 [151 L.Ed.2d at p. 607]), the method of service in this case fell below the requirements of case law for unincorporated associations because it was not reasonably calculated to provide notice to the gang.

Contrary to implications from the district attorney's briefing and argument, appellants did not need to show that they had a good defense once they showed that the judgment was void for lack of service. (*Peralta v. Heights Medical Center, Inc.* (1988) 485 U.S. 80, 84–87 [99 L.Ed.2d 75, 80–82, 108 S.Ct. 896]; *Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 204–206 [106 Cal.Rptr.2d 854].)

For lack of adequate notice, the default judgment issuing the permanent injunction against the Broderick Boys is void.

## DISPOSITION

The order denying the motion to set aside the judgment as void is reversed with directions to grant the motion.

Scotland, P. J., and Nicholson, J., concurred.