# IN THE SUPREME COURT OF CALIFORNIA

CALIFORNIA CAPITAL INSURANCE COMPANY et al.,
Plaintiffs and Respondents,

v.

CORY MICHAEL HOEHN,
Defendant and Appellant.

S277510

Third Appellate District
C092450

Placer County Superior Court
SCV0026851

November 18, 2024

Justice Jenkins authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Evans concurred.

CALIFORNIA CAPITAL INSURANCE COMPANY v. HOEHN

S277510

Opinion of the Court by Jenkins, J.

Code of Civil Procedure section 473, subdivision (d) (hereafter section 473(d)),[1] provides in relevant part that a court "may . . . on motion of either party after notice to the other party, set aside any void judgment or order." Under this provision, a party may move to vacate a judgment on the ground of improper service of process. A line of decisions, followed by the Court of Appeal below, has held that such motions must be made within a "reasonable time" if the challenged judgment is not void on its face and its invalidity must be established by extrinsic evidence. To set the outer limit for what constitutes a reasonable time, courts have borrowed the two-year time limit of section 473.5, which applies where proper constructive service was given but the defendant did not receive actual notice.[2]

---

[1]     All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]     Section 473.5, subdivision (a) provides: "When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action. The notice of motion shall be served and filed within a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment against him or her; or (ii) 180 days after service on him or her of a written notice that the default or

We granted review in this case to decide whether these decisions are correct. We hold that they are not. As explained below, we conclude that this judicially created rule finds no footing in the statute's text, has not been adopted by the Legislature, and lacks any sound justification. We reverse the Court of Appeal's judgment.

## I. BACKGROUND

On June 16, 2009, fire destroyed the building in which defendant Cory Michael Hoehn and his roommate, Forest Kroll, had leased an apartment. An investigator for the building's insurer, plaintiff California Capital Insurance Company (California Capital or the company), determined that "careless smoking" on the patio caused the fire. Although the investigator reached no conclusion about who started the fire or who was present when it began, California Capital sued Hoehn and Kroll in March 2010 for "general negligence," alleging that they caused the fire due to "improperly discarded smoking materials." The company asked for $472,326 in damages.

In March 2010, the company attempted to serve Hoehn with a complaint and summons in the lawsuit. The affidavit supporting the return of service stated that the summons and complaint were left with Shannon Smith and identified Smith as "Girlfriend," "Co-Occupant," and "a competent member of the household." A copy of the summons and complaint was also

_____

default judgment has been entered." Subdivision (c) provides that "Upon a finding by the court that the motion was made within the period permitted by subdivision (a) and that his or her lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect, it may set aside the default or default judgment on whatever terms as may be just and allow the party to defend the action."

mailed to Hoehn's address. (See § 415.20, subd. (b) [permitting substitute service "at a person's dwelling . . . in the presence of a competent member of the household" if the summons and complaint is mailed to the person's residence].) California Capital was unable to serve Kroll and dismissed him from the lawsuit.

In April 2011, approximately a year after attempting to serve Hoehn, California Capital requested and obtained a default judgment against Hoehn for $486,528, based on an investigator's declaration that careless smoking habits caused the fire.

In March 2018, California Capital assigned its rights to the default judgment to Sequoia Concepts, Inc. Based on a May 2018 writ of execution, the sheriff of Placer County, in January 2020, served on Hoehn's employer an earnings withholding order, placing a lien on Hoehn's wages in order to begin payment of the default judgment.

In March 2020, Hoehn filed a motion to set aside the default judgment. In a supporting declaration, he stated as follows: He did "not recall receiving or seeing the Summons or Complaint at any time." Shannon Smith "did not live with" him at the apartment and he "never received a summons or complaint or any legal paperwork from [her] at any time. He "did not receive any request for judgment or notice of a default judgment hearing" in the case. He learned that there had been a default judgment against him in January 2020, when his employer informed him that a lien had been placed on his wages. He promptly contacted an attorney who filed the motion to set aside the default judgment.

As here relevant, Hoehn's motion sought relief on two theories: (1) the court should exercise its power under section 473(d) to vacate the judgment; and (2) the judgment was obtained by extrinsic fraud or mistake. The trial court, following a long line of appellate court opinions, held that relief under section 473(d) was not available because Hoehn made the motion more than two years after entry of the default judgment. Regarding Hoehn's second asserted ground for relief, the court concluded that "the fact that the proof of service of summons misidentifies Shannon Smith as a co-occupant" did not "demonstrate that the statement constitutes extrinsic fraud."

The Court of Appeal affirmed. Relying on *Trackman v. Kenney* (2010) 187 Cal.App.4th 175 (*Trackman*) and *Rogers v. Silverman* (1989) 216 Cal.App.3d 1114 (*Rogers*) — and rejecting Hoehn's criticisms of those decisions — the court concluded that relief under section 473(d) was time-barred. It further concluded, like the trial court, that the mistake in service was insufficient to make out a claim of extrinsic fraud that would support equitable relief from a default judgment.

We granted review.

## II. DISCUSSION

### A. The Legal Framework

" 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.' [Citation.] Failure to give notice violates 'the most rudimentary demands of due process of law.' " (*Peralta v. Heights Med. Ctr., Inc.* (1988) 485 U.S. 80, 84 (*Peralta*).) Accordingly, the high

court has held that due process does not permit a state to require parties not properly served to show a meritorious defense in the underlying action before they can have their default judgments vacated. (*Id.* at p. 86.) Likewise, California courts have held that "compliance with the statutory procedures for service of process is essential to establish personal jurisdiction . . . . Thus, a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444; see 2 Witkin, Cal. Procedure (6th ed. 2021) Jurisdiction, § 119, p. 721.)

Under an interlocking set of statutes and judicial rules, a party who has not been properly served (constructively or personally), or who has been constructively served but not received actual notice, has multiple avenues of relief from judgment. Section 473.5, subdivision (a), provides that "[w]hen service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against [the party] in the action," the party may file a notice of motion to set aside the default "within a reasonable time, but in no event exceeding . . . two years after entry of a default judgment against" the party. Notwithstanding its broad language, section 473.5 has long been understood to specifically address the situation in which a party is constructively served and the judgment is valid — as when a summons is served on a competent member of the defendant's household pursuant to section 415.20 — but the defendant did not receive actual notice. (See *Anastos v. Lee* (2004) 118 Cal.App.4th 1314, 1319; *Rogers, supra,* 216 Cal.App.3d at pp. 1123–1124; 8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in the Trial Court, § 217, pp. 811–812.)

Section 473(d) addresses the situation where the judgment is "void," such as when the defendant has not been properly served. As earlier noted, where a section 473(d) motion asserts that the attacked judgment, " 'though valid on its face, is void for lack of proper service,' " some courts have, " 'by analogy' " to section 473.5, set a "two-year outer limit" for seeking relief. (*Trackman*, *supra*, 187 Cal.App.4th at p. 180.) *Rogers*, *supra*, 216 Cal.App.3d at pp. 1120–1124 first announced that rule relying on case law extending back into the 19th century interpreting earlier versions of sections 473 and 473.5. A number of courts have since followed *Rogers*. (See, e.g., *Trackman*, at p. 180; *Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 301, fn. 3 (*Gibble*); *Schenkel v. Resnik* (1994) 27 Cal.App.4th Supp. 1, 3–4.)

As these courts have articulated the rule, a defendant may seek relief from default for improper service more than two years after the default judgment as follows: First, a motion to vacate based on the ground of extrinsic fraud or mistake may be made at any time. (*Gibble*, *supra*, 67 Cal.App.4th at p. 314.) Second, " '[a] judgment or order that is invalid on the face of the record . . . may be set aside on motion, with no limit on the time within which the motion must be made.' " (*Trackman*, *supra*, 187 Cal.App.4th at p. 181.) This rule has also been applied when uncontested extrinsic evidence shows that the defendant was never properly served. (See *Thompson v. Cook* (1942) 20 Cal.2d 564, 569–570.) Third, a judgment or order valid on its face but claimed to be void based on extrinsic evidence may be attacked in an independent equitable action without time limits. (See *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228 (*Gorham*); *Groves v. Peterson* (2002) 100 Cal.App.4th 659, 670, fn. 5 (*Groves*) ["an independent action in equity to set aside

a judgment" for defective service of process "is not subject to a time limit"].)

This summary highlights the narrowness of the issue before us. The case law described above does not absolutely bar a defendant from challenging a default judgment for improper service two years after its entry when, as here, the invalidity does not appear on the judgment's face.[3] Rather, it limits a defendant's remedy in these circumstances to filing an independent equitable action, prohibiting a motion in the original action pursuant to section 473(d). (*Groves*, *supra*, 100 Cal.App.4th at p. 670, fn. 5; *Dill v. Berquist Construction Co.*, *supra*, 24 Cal.App.4th 1426, 1444; 8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 216, p. 810. Thus, although Hoehn cites a number of cases for the general proposition that a void judgement may be attacked at any time (see *Schwab v. Southern California Gas* (2004) 114 Cal.App.4th

---

[3] To prove that a judgment is void on its face, the party challenging the judgment is limited to the judgment roll, i.e., no extrinsic evidence is allowed. (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1327.) In this case, the judgment roll itself reveals no invalidity. Leaving papers with a competent member of a defendant's household is a proper means of effecting service. (See § 415.20, subd. (b); see *Trackman, supra*, 187 Cal.App.4th at p. 185.) Proof of the judgment's invalidity comes from extrinsic evidence, i.e., Hoehn's declaration that the summons was left with a person who was not, in fact, a member of his household. Moreover, California Capital's successor presented circumstantial evidence that Hoehn received the complaint, either from Shannon Smith or by mail, and contacted California Capital's counsel shortly thereafter in April of 2010. Because the trial court ruled Hoehn's section 473(d) motion untimely, it did not have cause to resolve the legal and factual issues arising from Hoehn's motion.

1308, 1320; *Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 862), that proposition is not in dispute. Rather, the question here is a narrower one: whether those in Hoehn's position may bring a motion *in the original action* more than two years — in his case almost nine years — after the default judgment's entry, or whether they must file an independent equitable action.

### B. The Significance of the *Rogers* Rule

Although existing law allows defendants in Hoehn's position to seek invalidation of a default judgment through an independent equitable action, the viability of the *Rogers* rule (see *Roger, supra,* 216 Cal.App.3d at p. 1126), which precludes him from filing a section 473(d) motion in the original action, remains significant. According to amici curiae UC Berkeley Center for Consumer Law & Economic Justice et al.,[4] the filing of a separate action is a more time- and resource-intensive endeavor than the filing of a section 473(d) motion in the original action.[5] They further assert that the difficulty of securing legal representation, due in part to the general inability of lawyers to obtain an award of attorneys' fees in these

---

[4] Amici curiae are a group of 13 nonprofit organizations representing low- and moderate-income consumers in debt collection actions.

[5] The added cost would include the filing fee for a complaint, $435 as compared to $60 for the filing of a motion (see Superior Court of California, Statewide Civil Fee Schedule (eff. Jan. 1, 2023) <https://www.courts.ca.gov/documents/Statewide-Civil-Fee-Schedule-eff-01012023.pdf> [as of November 12, 2024].) as well as the cost of drafting the complaint. All Internet citations in this opinion are archived by year, docket number, and case name at <http://www.courts.ca.gov/38324.htm>.

types of cases, makes the filing of separate actions effectively impossible for most people facing debt collection claims.

It has indeed been documented that a large proportion of defendants in debt collection actions are not represented by counsel. (See Holland, *Junk Justice: A Statistical Analysis of 4,400 Lawsuits Filed by Debt Buyers* (2014) 26 Loy. Consumer L.Rev. 179, 208–210 [analysis of six studies finds that two percent of debtors were represented by an attorney].) Moreover, "the vast majority of consumers lose the vast majority of cases by default the vast majority of the time." (*Id.* at p. 179; see *id.* at pp. 208–210 [finding in those studies 85 percent of debtors served with complaints did not respond].) That high default rate is likely attributable in part to inadequate and even fraudulent service. The filing of false affidavits to conceal a lack of lawful service has reportedly become a common practice among debt collectors and has been given its own name — "sewer service" — so denominated because "the server throws the documents 'down the sewer' and then falsifies its affidavit of service." (Fed. Trade Com., Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration (July 2010) p. 8, fn. 22, <https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-staff-report-repairing-broken-system-protecting/debtcollection report.pdf> [as of November 12, 2024]; see *Freeman v. ABC Legal Services, Inc.* (N.D.Cal. 2011) 827 F.Supp.2d 1065, 1068, fn. 1 [defining sewer service as " 'failing to serve a debtor and filing a fraudulent affidavit attesting to service so that when the debtor later fails to appear in court, a default judgment is entered against him' "].) Moreover, communities of color are significantly more likely to be impacted by the questionable debt collection practices of companies that specialize in buying and

collecting debts. (See Center for Responsible Lending, Court System Overload: The State of Debt Collection in Cal. after the Fair Debt Buyer Protection Act (2020) pp. 5–6.)

While these assertions were not tested in the trial court, respondent does not contest them here. The significant concerns they raise suggest why resolution of the question before us matters. The real-world difficulties the *Rogers* rule may pose for defendants attempting to obtain relief from unjust default judgments, and the fact that such judgments may be all too common, form the backdrop against which we consider Hoehn's request to repudiate that rule.

### C. Is the *Rogers* Rule Compelled by Statute?

#### 1. *Historical Background*

Section 473(d) states: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order." An understanding of how that language led to the *Rogers* rule and its two-year time limit requires us to trace the statute's history.

In California's earliest days, "terms of court" limited the time in which motions could be brought. Generally, no motion could be entertained "to set aside a judgment on any ground, including that of want of jurisdiction over the person of the defendant in the action in which the judgment was entered, after the expiration of the term in which it was entered." (*Bell v. Thompson* (1862) 19 Cal. 706, 708–709.) An exception to that rule — appearing in section 68 of the Practice Act, the predecessor to section 473 (Stats. 1851, ch. 5, § 68, p. 60) — allowed parties to move to vacate a judgment within six months

from its entry in cases where the summons and complaint had not been personally served. As the *Bell* court explained, even though this provision was likely intended for situations in which a party had been constructively but not personally served, i.e., where the judgment was valid, courts applied the same six-month limitation when there was a motion to set aside a judgment invalid because of a "want of service of summons." (*Bell*, at p. 708.) There was at the time no statutory authorization for courts to vacate void judgments, but the capacity to do so was considered part of courts' inherent authority. (See, e.g., *Norton v. Atchison etc. R. R. Co.* (1893) 97 Cal. 388, 396; see also *In re Estrem's Estate* (1940) 16 Cal.2d 563, 571–572 [recognizing that courts' authority to set aside void judgments predated codification of that authority in section 473].)

California's 1879 Constitution abolished terms of court (see *In re Gannon* (1886) 69 Cal. 541, 544), but the term-of-court era provided a kind of template for what followed. Section 473 was enacted in 1872, replacing section 68 of the Practice Act. In relevant part, it provided an opportunity for relief from a default judgment when "the summons in an action has not been personally served on the defendant." (1872 Code of Civil Procedure, § 473.) Courts understood section 473, like section 68 of the Practice Act, to apply to a situation in which constructive service had been properly made, and therefore the default judgment was valid, but the service did not result in actual notice. (See *People v. One 1941 Chrysler 6 Tour Sedan* (1947) 81 Cal.App.2d 18, 21 (*One 1941 Chrysler Sedan*), disapproved of on other grounds by *People v. One 1941 Chevrolet Coupe* (1951) 37 Cal. 2d 283 [distinguishing motion under this provision from motion to set aside void judgment].) Section 473

was amended shortly after it was enacted to increase the time to request relief from default judgment under these circumstances from six months to one year. (See Code Amends. 1873–1874, ch. 383, § 60, p. 302.)

After terms of court were abolished, the rule developed that when a party sought to invoke the courts' inherent power to vacate void judgments, "unless the judgment is void on the face of the judgment-roll the court's action to set it aside must have been invoked within a reasonable time." (*Richert v. Benson Lumber Co.* (1934) 139 Cal.App. 671, 674, citing *Smith v. Jones* (1917) 174 Cal. 513, 515.) As for what constituted a "reasonable time," the judicial consensus eventually settled on section 473's one-year limit. (*Richert*, at pp. 675–676; *Vaughn v. Pine Creek Tungsten Co.* (1928) 89 Cal.App. 759, 761.) Courts did not conclude that section 473 actually encompassed a motion to vacate a void judgment for want of proper service, but they reasoned that its one-year limitation should apply to such claims "by analogy." (*Vaughn v. Pine Creek Tungsten Co.*, at p. 761.)

The Legislature revamped section 473 in 1933, creating two new sections. First, it added paragraph 4,[6] which was

---

[6] The reason for this addition was explained in *In re Estrem's Estate, supra,* 16 Cal.2d at page 572: "Prior to 1933 this particular subdivision of 473 was in section 900a of the Code of Civil Procedure, relating to justices' courts. In that year as part of extensive amendments made to various code sections relating to the jurisdiction and procedure of the courts, the special sections relating to the justices' courts were repealed and their contents incorporated in the general sections relating to pleadings in civil actions (Code Civ. Proc., secs. 420 to 475), which were at that time made applicable to all courts. (Code

identical to the language currently found in section 473(d).[7]
Second, it transferred the courts' power to grant relief from
default judgments for lack of personal service from section 473
to new section 473a. (See *One 1941 Chrysler Sedan*, *supra*, 81
Cal.App.2d at pp. 21–22.) The consensus view among courts was
that "[t]he addition of paragraph 4 to section 473 in no way
changed the then existing law. It merely gave express statutory
recognition to an inherent power of the court. It in no way
changed the period within which a motion to set aside the void
judgment must be made. That period remained a reasonable
time, which, by analogy, [was] the one-year period [then]
contained in section 473a." (*One 1941 Chrysler Sedan*, at p. 22;
see *In re Estrem's Estate, supra,* 16 Cal.2d at p. 571.)

Section 473a was repealed and replaced by section 473.5
in 1969. (See *Rogers*, *supra*, 216 Cal.App.3d at p. 1123.) Section
473.5 extended the time a defendant could seek relief from a
default judgment where constructive service had not resulted in
actual notice from one year to two years after entry of judgment.

At issue in *Rogers* was a section 473 motion to relieve the
defendant of a default judgment on the grounds that he had not
been served and the return of service had been falsified. The
plaintiff argued that the one-year period that former section
473a set forth should continue to govern rather than the two-
year period that its successor, section 473.5, allowed. The

---

Civ. Proc., sec. 34.) Fear existed that unless the contents of
former section 900a were placed in some statute, courts not of
record might be held to be without those powers."

[7] In 1996, the Legislature inserted subdivision designations
into section 473 and paragraph 4 became subdivision (d). (Stats.
1996, ch. 60, § 1.)

*Rogers* court observed that "[n]o reported decision has considered whether the limitation period contained in section 473.5 governs by analogy a motion for relief from a default judgment valid on its face but otherwise void because of improper service." (*Rogers*, *supra*, 216 Cal.App.3d at p. 1123.) The court concluded that the analogy was apt. "Under plaintiffs' position, a party constructively served has up to two years in which to move for relief, yet a party not served at all only has one year. . . .There is no valid reason to conclude that the Legislature intended to treat those defendants properly served more favorably than those not served at all." (*Rogers*, at pp. 1123–1124.) *Rogers* therefore ruled that the defendant's motion, brought less than two years after entry of the default judgment, was timely.

As noted, most California courts have followed *Rogers*'s rule that a motion for relief from default judgment valid on its face, but void for improper service, must be made within the two-year period that section 473.5 sets forth. Although some courts have observed generally that void judgments may be attacked at any time (see *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830), they have done so in cases in which the *Rogers* rule was not at issue. (See *Falahati*, at p. 827 [motion to vacate default judgment made 10 months after entry of judgment].)

The case that comes closest to departing from the *Rogers* rule is *Gorham*, *supra*, 186 Cal.App.4th 1215. There, the defendant moved to set aside a default judgment almost 10 years after its entry, and he established through declarations and supporting documents that he had been incarcerated at the time the proof of service falsely claimed that he had been personally served at a former residence. Although the court could have ruled for the defendant on grounds of extrinsic fraud,

it instead relied on a broader constitutional principle: "Because [the defendant] was never served with the complaint and summons . . . the trial court never obtained personal jurisdiction over him [citation], and the resulting default judgment was, and is, therefore void, not merely voidable, as violating fundamental due process." (*Gorham*, at p. 1230.) *Gorham* referenced the *Rogers* line of cases only obliquely (*id.* at p. 1228) and did not discuss it.

### 2. *Did the Legislature Incorporate or Reject the* Rogers *Rule?*

With this history in mind, we consider whether the Legislature intended to impose a two-year limit on section 473(d) motions for judgments not void on their face. As noted, section 473(d)'s text contains no hint of that, or any other, time limitation. The absence of such language in light of the relevant historical background gives rise to several possible inferences.

One inference is that the omission of any express time limit in section 473(d) implies a legislative rejection of any such limit. " 'In interpreting statutory language, a court must not "insert what has been omitted, or . . . omit what has been inserted." (Code Civ. Proc., § 1858.).' " (*Pieri v. City and County of San Francisco* (2006) 137 Cal.App.4th 886, 892.) Hoehn contends that where, as here, the Legislature has chosen to include a phrase in one provision of the statutory scheme (e.g., "two years" in section 473.5), but to omit it in another provision (e.g., no time limitation in section 473(d)), courts should presume that the Legislature did not intend for the language it included in the first to be read into the second. The absence of a time limit in section 473(d) is also notable because in a different subsection of the very same statute, section 473,

subdivision (b), the Legislature prescribed a six-month time limit for defendants to obtain relief from default judgments resulting from their own "mistake, inadvertence, surprise, or excusable neglect." (See *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73 ["When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning"]; *Craven v. Crout* (1985) 163 Cal.App.3d 779, 783 ["Where a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent"]; *Campbell v. Zolin* (1995) 33 Cal.App.4th 489, 497 ["Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning"].)[8]

On the other hand, under a familiar canon of statutory construction, legislative silence may indicate legislative acquiescence. " '[A] legislature is presumed to be aware of the judicial interpretation of words dealing with the same or

---

[8] California Capital contends that Hoehn did not preserve for appeal the argument that we should abrogate the *Rogers* rule, because Hoehn did not sufficiently develop that argument in the trial court. The record proves otherwise. In reply to California Capital's assertion in the trial court that the section 473(d) motion was time-barred, Hoehn argued, albeit briefly, that section 473(d)'s language does not support the *Rogers* rule and that the analogy to section 473.5 is inapt. California Capital cites no authority to support its contention that Hoehn's argument below is insufficient to preserve his right to make the same argument in a more developed form on appeal.

analogous topics [and] . . . to intend the same well-settled meaning of these words unless it expressly states otherwise.' " (*Korbel v. Chou* (1994) 27 Cal.App.4th 1427, 1431.) Thus, when the Legislature codified the courts' inherent power to vacate void judgments, it knew that courts had imposed by analogy the one-year deadline for challenging default judgments when constructive service did not result in actual notice, and it arguably acquiesced in that rule. (See *One 1941 Chrysler Sedan*, *supra*, 81 Cal.App.2d at p. 22 [codification of courts' inherent power to vacate void judgments did not alter the time limit for bringing motions to invoke that power]; *Rogers*, *supra*, 216 Cal.App.3d at pp. 1123–1124.) Relatedly, what is now designated as section 473, subdivision (b) was substantively amended once, in 1991, since the *Rogers* rule was formulated, while section 473(d) was left untouched. (Stats. 1991, ch. 1003, § 1.)

But another inference from legislative silence, and the one we find the most plausible, is that the Legislature took no position on the rule's validity. As we have longed recognized, legislative inaction supplies only a weak reed upon which to lean in inferring legislative intent. (*Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 116.) Legislative acquiescence is especially unpersuasive when it is "invoked to show the Legislature has acquiesced in judicial decisions applying *judicial doctrines* . . . . When a precedent is challenged as incorrectly extending such a doctrine, 'it is primarily up to the courts to reconsider its correctness.' " (*People v. Brown* (2012) 54 Cal.4th 314, 327–328, citing *People v. Superior Court* (2010) 48 Cal.4th 1, 21.) As noted, the deadline for bringing motions to vacate judgments void for lack of proper service originated as a rule that *courts* devised to regulate their

inherent power to vacate void judgments before that power was codified. (See *Vaughn v. Pine Creek Tungsten Co.*, *supra*, 89 Cal.App. at p. 761.) The fact that the Legislature eventually codified that power in section 473(d), but not the judicially imposed deadline, does not necessarily mean, as Hoehn argues, that the Legislature rejected the deadline. However, the fact that the judicial deadline remained uncodified, in contrast to the statutory deadline provided in section 473, subdivision (b) and section 473.5, gives rise to the inference that the Legislature also did not intend to make the rule a statutory imperative beyond the reach of judicial modification. In other words, courts, as part of their inherent power to vacate void judgments, also had the authority to make and modify rules governing the exercise of that power. When the Legislature codified that power in section 473(d), there is no indication that it intended to preclude courts from continuing to exercise their rule-making authority by reconsidering the correctness of time limits judicially imposed on that power.

### D. Should the *Rogers* Rule Stand?

The question thus arises: Should we uphold the rule that, where extrinsic evidence is relied on to show that a judgment is void for improper service, a section 473(d) motion must be filed within two years of entry of judgment, or else the judgment may be attacked only through an independent equitable action that may be more costly and burdensome for the party seeking relief? In order to answer that question, we consider possible justifications for the rule.

First, as we have seen, courts devised the rule against the background of early practice in this state, where motions pertaining to a given case had to be made within the court's

term. After terms of court were abolished, courts continued to require that motions to set aside default judgments be made within a short time frame — a "reasonable time" — or otherwise challenged in an independent action, at least when evidence was required to demonstrate the judgment was void and evidentiary questions might arise. (See *Norton v. Atchison, etc. R. R. Co.*, *supra*, 97 Cal. at p. 392, ["Under our present system, terms of court are abolished, and a motion to set aside a judgment would have to be made within a reasonable time"].)

Second, in determining what constituted the outer boundaries of a "reasonable time" in which to bring such a motion, courts concluded that the motion was sufficiently analogous to a motion made to vacate a valid judgment where proper constructive service had not resulted in actual notice. As noted, in *Rogers*, it was the *defendant* who benefited from, and thus argued for, that rule. (*Rogers*, *supra*, 216 Cal.App.3d at p. 1123.) *Rogers* was on firm ground in reasoning that a person who received no notice of an action because of defective service should not be in a *worse* position than a person who received no notice after proper constructive service. But it is unclear why the former should be treated *the same as* the latter. A person moving for relief under section 473(d) seeks to invalidate a judgment void for improper service, whereas a defendant moving for relief under section 473.5 seeks to set aside a *valid* judgment rendered without actual notice. In the latter case, the Legislature's express imposition of a deadline evidently represents a balancing between the interests of a party subject to a default judgment without actual notice and the interest in the finality of a judgment for a party that furnished proper, albeit constructive, notice. Notably, the balancing of interests is different when a defendant's due process rights are at stake

because the plaintiff has not properly served the defendant and the court has never rightfully assumed jurisdiction over that defendant. In the long line of appellate decisions leading up to the present Court of Appeal opinion, no convincing justification has been given for why these fundamentally dissimilar situations should be treated alike.

A third justification for the *Rogers* rule, implicit in the case law, is the perceived limitations of the motion procedure as a forum for litigating evidentiary issues. A line of cases has held that denial of an earlier motion to vacate a default judgment does not collaterally estop a subsequent independent equitable action seeking the same relief because generally "in the motion procedure the moving party is limited to presenting ex parte affidavits of voluntary witnesses, unless the trial court in its discretion permits a greater latitude. The party does not have the right to produce oral testimony or to compel witnesses to attend for deposition or cross-examination. In other words, the motion procedure does not involve all the aspects of full litigation." (*Grove, supra,* 100 Cal.App.4th at pp. 667–668; see *Cowan v. Cowan* (1946) 72 Cal.App.2d 868, 872 [discussing the disadvantages of proceeding by motion to vacate a default judgment in a divorce case]; *Estudillo v. Security Loan & Trust Co.* (1906) 149 Cal. 556, 564.)

Thus, from early on, courts, after a brief grace period, disapproved of proceeding by motion to vacate a default judgment when the judgment's invalidity depended on evidence outside the judgment roll that might require an adversarial proceeding. In *People v. Harrison* (1890) 84 Cal. 607, 607–608, the defendant sought, 16 years after the judgment's entry, to vacate the judgment for lack of personal service and other alleged defects in service that were not apparent on the

judgment's face.  The court stated: " 'We know of no provision of law which can be held to authorize the vacation of a judgment on a mere motion after so long a time.' " (*Id.* at p. 608.)  A motion seeking to vacate a judgment void on its face, on the other hand, might be entertained by motion at any time because it would not involve an adversarial evidentiary hearing.  (See, e.g., *People v. Greene* (1887) 74 Cal. 400, 402–403, 405 [where it is evident from the judgment roll that the defendant was not personally served, and there was no affidavit showing publication of the summons, the judgment may be vacated by motion 11 years after default judgment].)

Nonetheless, the cases recognize that motion proceedings to vacate a default judgment may be given collateral estoppel effect when the trial court in its discretion allows a hearing on the motion and permits oral testimony.  (*Groves*, *supra*, 100 Cal.App.4th at p. 668 [citing "(*Darlington v. Basalt Rock Co.* (1961) 188 Cal.App.2d 706, 709, 710, [10 Cal. Rptr. 556] [judge held hearing, made clear the court did not restrict the party to affidavits, interrogated a witness, and gave party full opportunity to develop the issues by oral testimony]; *Preston v. Wyoming Pac. Oil Co.* (1961) 197 Cal.App.2d 517, 527, [17 Cal. Rptr. 443] [trial court held hearings in which much oral testimony and other evidence was received]; see *Sarten v. Pomatto* (1961) 192 Cal.App.2d 288, 300–301, [13 Cal. Rptr. 588] [dictum, recognizing principle that 'where the trial of an issue on a motion is as comprehensive as the trial of the same issue in a suit' collateral estoppel would apply])"].)

The procedural limitations on motions do not credibly justify a categorical requirement that a defendant seeking relief from a default judgment valid on its face must, after two years, seek relief via an independent equitable action rather than a

section 473(d) motion. Such a requirement would be arbitrarily over-inclusive. Given the limited nature of the inquiry — was the defendant properly served — there will be some cases, and perhaps many, that may be tried on affidavits or declarations alone, and may be as effectively adjudicated by motion three years after entry of the default judgment as after one year. (See, e.g., *Gorham*, *supra*, 186 Cal.App.4th at pp. 1222, 1230 [proving residence contrary to the affidavit of service almost 10 years after entry of the default judgment].) And there are some motions brought beyond the two-year limit as to which trial courts will exercise their discretion to hold hearings and allow oral testimony. There is no reason for compelling defendants in either context to proceed by independent equitable action rather than by motion in the original action simply because two years have passed from entry of default judgment.[9]

We do not lightly part ways with longstanding Court of Appeal precedent. But we conclude that such a step is appropriate in this case. The *Rogers* rule lacks either a

---

[9] We note that there are varying practices regarding whether trial courts will allow hearings and oral testimony in support of motions. (See *Rohrbasser v. Lederer* (1986) 179 Cal.App.3d 290, 299 [noting at the time that motions practices in one district of the Los Angeles County Superior Court did not allow for oral testimony].) Nothing in this opinion requires trial courts to alter how they manage their law and motion docket. Nonetheless, a proper factor for courts to consider in determining whether to permit oral testimony in support of a section 473(d) motion is the additional burden the defendant will face if required to file an independent equitable action.

statutory basis or a clear and credible rationale.[10]  We hold that a section 473(d) motion to vacate a judgment that is void for lack of proper service is not subject to the judicially imposed two-year limitation.[11]

The right of civil defendants to proper service is essential to their basic due process right to notice and to their ability to defend against liability claims that may lead to unwarranted financial hardship.  (See *Peralta, supra*, 485 U.S. at p. 84.)  If, as Hoehn asserts in his declaration, he first learned of this

---

[10]  We also note that Federal Rules of Civil Procedure, rule 60(b)(4), contains no time limitation for making motions to set aside a void judgment.  (*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran* (D.C. Cir. 2013) 734 F.3d 1175, 1180 & fn. 1 [citing cases].)  And under federal law, as under California law, improper service may render a default judgement void.  (*Bell v. Pulsman Safety Equipment Corp.* (8th Cir. 2018) 906 F.3d 711, 714–715.)  Some states have adopted the equivalent of federal Rule 60(b)(4), and courts in those states have held that motions for relief from void default judgments may be brought at any time.  (See, e.g., *Turner v. Turner* (Tenn. 2015) 473 S.W.3d 257, 277–279 [motion eight years after default judgment was timely]; *Greisel v. Gregg* (Fla.Dist.Ct.App. 1999) 733 So.2d 1119, 1121 [vacating almost seven-year-old default judgment for improper service].)

[11]  We note some courts require defendants seeking to vacate a default judgment to act with reasonable diligence after learning of that judgment.  (See, e.g., *Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 37 ["diligence is measured from when a party discovers the default or default judgment"].)  Other courts have cast doubt on the imposition of such a requirement. (See *Gorham, supra*, 186 Cal.App.4th at p. 1229 [" '[w]hat is initially void is ever void and life may not be breathed into it by lapse of time' "].)  We need not resolve that issue here.  According to Hoehn's declaration, he unquestionably showed reasonable diligence by challenging the default judgment within three months after learning of it.

lawsuit when his wages were garnished almost nine years after a default judgment had been entered, this case well illustrates the fundamental injustice that results from the lack of notice. Moreover, as noted, requiring the filing of an independent equitable action in order to vacate a default judgment for lack of proper service has the potential for adding additional costs and burdens on defendants. (See *ante*, at pp. 8–9.) Procedural hurdles that are unnecessary to the fair adjudication of default judgments should not stand in the way of the vindication of a defendant's due process rights. Because the rule in *Rogers* that section 437.5's two-year time limit applies to section 473(d) motions to vacate is such a hurdle, we abrogate the rule and disapprove of *Rogers v. Silverman, supra,* 216 Cal.App.3d 1114 and its progeny.

### E. Extrinsic Fraud and Mistake

As noted, Hoehn also claims the default judgment should be vacated on the grounds of "extrinsic fraud or mistake." The Court of Appeal parsed that term and declined to consider Hoehn's claim of "extrinsic mistake," finding that he "did not clearly advance" that theory in the trial court. Considering the truncated claim of "extrinsic fraud" alone, the Court of Appeal, following one line of appellate cases, held that a defendant seeking relief from a default judgment on that basis must demonstrate the plaintiff's "inequitable conduct," some intentional effort to "lull [the defendant] into a state of false security." (*Gibble, supra,* 67 Cal.App.4th at p. 314.) It found no such showing in the present case.

We agree that Hoehn has not shown, and indeed does not claim, inequitable conduct on the part of California Capital or its successor. We disagree, however, with California Capital's

assertion that Hoehn waived or forfeited the claim of "extrinsic mistake." In his trial court briefing, he asserted that the default judgment was "void due to extrinsic fraud *or mistake*." (Italics added.) Although he used the term "extrinsic fraud" more frequently in his trial court brief, it is clear from the context that he also used the general term "extrinsic fraud" to encompass both extrinsic fraud and extrinsic mistake.

It is unclear whether the Court of Appeal in the present case would have reached the same conclusion had it considered the merits of Hoehn's "extrinsic fraud or mistake" claim. Some courts have interpreted the category of "extrinsic fraud or mistake" expansively. (See *Munoz v. Lopez* (1969) 275 Cal.App.2d 178, 181 ["the terms are given a very broad meaning which tends to encompass all circumstances that deprive an adversary of fair notice of hearing whether or not those circumstances would qualify as fraudulent or mistaken in the strict sense"].) We express no opinion how or whether Hoehn's extrinsic mistake claim is substantively distinct from his claim to vacate a void judgment for lack of proper service under section 473(d). In any case, Hoehn is free to raise in the Court of Appeal the issue of whether the default judgment at issue here is void due to "extrinsic fraud or mistake."

## III. DISPOSITION

The Court of Appeal upheld the trial court's judgment that Hoehn's section 473(d) motion to set aside the default judgment was time-barred. We reverse the Court of Appeal's judgment and remand to that court for proceedings consistent with this opinion.

**JENKINS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  California Capital Insurance Co. v. Hoehn

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 10/19/22 – 3d Dist.
**Rehearing Granted**

---

**Opinion No.** S277510
**Date Filed:** November 18, 2024

---

**Court:** Superior
**County:** Placer
**Judge:** Michael W. Jones

---

**Counsel:**

Kazan, McClain, Satterley & Greenwood and Denyse F. Clancy for Defendant and Appellant.

California Western School of Law, William J. Aceves; UC Irvine, School of Law and Paul L. Hoffman for Erwin Chemerinsky, Pooja Dadhania, David Freeman Engstrom, Kenneth S. Klein, Mark Rosenbaum and Gary C. Williams as Amici Curiae on behalf of Defendant and Appellant.

Alan Charles Dell'Ario for Consumer Attorneys of California and American Association for Justice as Amici Curiae on behalf of Defendant and Appellant.

David S. Nahmias, Seth E. Mermin; Noah Zinner, Katherine R. Sass; and Leigh E. Ferrin for the UC Berkeley Center for Consumer Law & Economic Justice, Bay Area Legal Aid, OneJustice, Community Legal Aid SoCal, East Bay Community Law Center, Impact Fund, Legal Aid Association of California, Legal Assistance for Seniors, Los Angeles

Center for Law and Justice, Mental Health Advocacy Services, Neighborhood Legal Services of Los Angeles County, Public Counsel and Western Center on Law and Poverty as Amici Curiae on behalf of Defendant and Appellant.

Edmond B. Siegel & Associates, Edmond B. Siegel; Andrew Altholz; Law Offices of Steven J. Horn and Steven J. Horn for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Denyse F. Clancy
Kazan, McClain, Satterley & Greenwood, A Professional Law Corporation
55 Harrison Street, Suite 400
Oakland, CA 94607
(510) 302-1000

Steven J. Horn
Law Offices of Steven J. Horn
5737 Kanan Road, #722
Agoura Hills, CA 91301
(818) 409-6055